# GEISMANN v. MISSOURI-EDISON ELECTRIC COMPANY, Appellant.

### Division Two, March 31, 1903.

1. **Negligence:** INJURY FROM ELECTRIC WIRE. The petition in this case, which is one for damages for injuries received by plaintiff's husband by reason of a wire, which he held in his hand and which was attached to a sign which he, in the line of his employment, was removing, coming in contact with an uninsulated electric wire of the defendant light and power company, states a good cause of action for negligence at common law, after striking out all reference to ordinances governing such matters.

2. ———: ———: INSULATION OF WIRES: LIABILITY. It is the duty of a company engaged in supplying electricity to consumers to use every accessible precaution to insulate its wires at all points where people have a right to go, and to use the utmost care to keep them so insulated, and for a failure to take such precaution it is liable in damages for personal injuries to a person who is in a place where he has a right to be, unless such person was guilty of negligence on his part directly contributory thereto.

3. ———: ———: ———: "REASONABLY SAFE." An electric wire must be kept more than "reasonably safe." The law makes it the duty of the company to keep its electric wires so insulated that those in the discharge of their duties may not be injured by coming in contact with them.

4. ———: ———: ———: PROOF OF NON-INSULATION. The death of such person from a wire he held in his hand coming in contact with one of the company's wires, is conclusive proof of the defect of the insulation and the neglect of the company.

5. ———: ———: ———: ———: AT POINT OF CONTACT: PROOF. Nor is it necessary for plaintiff to prove, in order to recover, that the insulation was off of the wire at the exact point where the contact with the wire he held in his hand occurred. It is sufficient to show that the defective insulation caused the injury, without fault on his part, and that he had a right to be where he was.

6. ———: ———: ———: ———: CONTRIBUTORY NEGLIGENCE. And whether or not the injured person was guilty of contributory negligence is a question of fact for the jury.

Geismann v. Missouri-Edison Electric Co.

7. ———: MEASURE OF DAMAGES: INSTRUCTION. If an instruction on the measure of damages is not erroneous in its general scope, defendant can not complain if it failed to ask any instruction on the subject, for the right was reserved to defendant to point out the elements limiting the damages by an instruction of its own asking.

8. ———: INSTRUCTION: NON-PREJUDICIAL. The judgment should not be reversed because the court gave an instruction which announces a correct abstract proposition of law, but does not undertake to cover the whole case or authorize a recovery, and when taken with all the other instructions given is non-prejudicial.

Appeal from St. Louis County Circuit Court.—*Hon. Rudolph Hirzel,* Judge.

AFFIRMED.

*Albert Blair* and *Gilliam & Smith* for appellant.

(1) After the exclusion of the ordinances there was nothing left in the petition, and defendant's demurrer to the evidence should have been sustained. Waldhier v. Railroad, 71 Mo. 516; Schneider v. Railroad, 75 Mo. 595; Watson v. Railroad, 133 Mo. 246; McManamee v. Railroad, 135 Mo. 440; McCarty v. Rood Hotel Co., 144 Mo. 402; San Antonio Gas & El. Co. v. Speegle, 60 S. W. 884. (2) There was clearly contributory negligence by plaintiff's husband, and for that reason defendant's demurrer to the evidence should have been sustained. Church v. Railroad, 119 Mo. 215; Baker v. Railroad, 122 Mo. 589; Hickman v. Railroad, 47 Mo. App. 65; Smith v. Railroad, 60 Mo. App. 207; Weaver v. Railroad, 60 Mo. App. 207; McCarty v. Rood Hotel Co., 144 Mo. 397; Schweitzer's Adm'r v. Gen. Elec. Co., 52 S. W. 830; Cook v. Wilmington City Elec. Co., 9 Houst. (Del.) 306, 32 Atl. Rep. 643; Leduke v. Railroad, 4 Mo. App. 485; Carroll v. Interstate Rapid Transit Co., 107 Mo. 153; O'Donnell v. Patton, 117 Mo. 13; York v. Railroad, 117 Mo. 405; Corcoran v. Railroad, 105 Mo. 399; Junior v. Elec. Light & Power Co., 127 Mo. 79; Craig v. Sedalia, 63 Mo. 417; Fugler v. Bothe, 117 Mo. 405. (3) There

was absolute lack of evidence that insulation on defendant's wire was out of repair or worn off, where, or near where, Geismann was standing when he fell, and for that reason the demurrer to the evidence should have been sustained. Hipsley v. Railroad, 88 Mo. 348; Bowles v. Kansas City, 51 Mo. App. 420; Nivette v. Railroad, 42 La. Ann. 1153. (4) The evidence raises a mere conjecture, without substantial evidence to support it, and for that reason the demurrer to the evidence should have been given. Perse v. Railroad, 51 Mo. App. 171; Drake, Adm'r, v. Critz, 83 Mo. App. 650. (5) Plaintiff's first instruction is not specific enough in restriction of evidence to allegations of the petition, and does not lay just ground upon which to hold defendant liable for negligence, and is therefore erroneous; and it ignores the evidence of the injury to the wire by plaintiff's husband and his associates, and practically ignores contributory negligence. Clements v. Elec. Light Co., 44 La. Ann. 692, 4 Amer. Elec. Cas., 386; Griffin v. United Elec. Light Co., 164 Mass. 492; Raysdon v. Trumbo, 52 Mo. 35; Chappell v. Allen, 38 Mo. 213; Young v. Webb City, 150 Mo. 342. (6) Plaintiff's second instruction has the same vices as the first, and gave no proper instructions as to Geismann's duty in view of his knowledge of the condition of the wire nor of defendant's duties and obligations in regard to the wire, and is erroneous therein; and it alleged a duty to insulate and protect the wire which was not in the petition. Carder v. Primm, 60 Mo. App. 423; Raysdon v. Trumbo, 52 Mo. 35; Chappell v. Allen et al., 38 Mo. 213; Clements v. Elec. Light Co., 44 La. Ann. 692; Chitty v. Railroad, 148 Mo. 64. (7) Plaintiff's third instruction is erroneous in limiting the appearance of the wire to the place where Geismann was standing, and making that appearance an invitation and inducement for him to risk contact with the wire. And it tendered an issue not made in the pleadings. It was also too abstract, failed to set out suitable facts and ignored the

defense of contributory negligence, and said third instruction was misleading.  Chappell v. Allen, 38 Mo. 213; Clements v. Elec. Light Co., 44 La. Ann. 692; Newark Elec. Light Co. v. Garden, 6 Amer. Elec. Cas., 275; Melvin v. Railroad, 89 Mo. 106; Bradley v. Railroad, 138 Mo. 293; Hector v. Boston Elec. Light Co., 161 Mass. 558; s. c., 174 Mo. 212; Chitty v. Railroad, 148 Mo. 64.  (8)  Plaintiff's fifth instruction is erroneous because of its generality and giving the jury no proper basis or grounds upon which to compute plaintiff's damages.  Kick v. Doerste, 45 Mo. App. 141; Goss v. Railroad, 50 Mo. App. 614; Schaub v. Railroad, 106 Mo. 74; McGowan v. St. Louis Ore & Steel Co., 109 Mo. 518; Schmitz v. Railroad, 46 Mo. App. 394.   (9) The court erred in modifying defendant's eighth instruction by inserting the words "defective or noninsulated," and the words "was at some point or points not properly insulated."  San Antonio Gas & Elec. Co. v. Speegle, 60 S. W. 884.   (10)  The verdict is the result of passion and prejudice on the part of the jury. Hamman v. Cen. Coal & Coke Co., 156 Mo. 245; Chitty v. Railroad, 148 Mo. 64.   (11)  The verdict is against the weight of the evidence as to negligence of defendant and contributory negligence by plaintiff's husband.   (12)  Defendant could not reasonably have anticipated any such accident and therefore was not negligent in not providing against it.   Hysell v. Swift & Co., 78 Mo. App. 39; Block v. Railroad, 89 Wis. 378; Huber v. Railroad, 6 Amer. Elec. Cases, 293; McMillan v. Illuminating Co., 5 Amer. Elec. Cases, 332.

*L. Frank Ottofy* and *Jesse A. McDonald* for respondent.

(1)  With the municipal ordinances excluded, a complete case of negligence is described and charged against defendant by the petition, and the evidence was conclusive and conformed to the pleading.   Gannon v.

Laclede Gas Light Co., 145 Mo. 511; Knox County v. Groggin, 105 Mo. 182; Morrow v. Susber, 97 Mo. 155; Radcliffe v. Railroad, 90 Mo. 127; Kehoe v. Taylor, 31 Mo. App. 588.   (2)   The defendant was required under the law, in view of the dangerous character of its wires, to exercise the highest degree of care to prevent injury to the deceased who was engaged in a lawful occupation, in a place where he was entitled to be.   Appellant should, therefore, not complain that the case was submitted to the jury on a series of comprehensive instructions, requiring of it only ordinary care and prudence.   Gannon v. Laclede Gas Light Co., 145 Mo. 512; Perham v. Portland General Electric Co., 33 Oregon 471; Clements v. Electric Light Co., 44 La. Ann. 692; Newark Electric Light and Power Co. v. Garden, 78 Fed. 74; Ennis v. Gray, 87 Hun 355; Giraudi v. Improvement Co., 107 Cal. 120; Griffin v. Electric Co., 164 Mass. 492; McLaughlin v. Light Co., 100 Ky. 173; Railroad v. Conery, 33 S. W. 428; Haynes v. Gas Co., 114 N. C. 203; O'Donnell's Adm. v. Electric Light Co., 55 S. W. 202; Thompson on Electricity, sec. 65.   (3) The evidence clearly shows improper construction of defendant's wires, so that the insulation was liable to become worn off and the current exposed, and that the insulation had, in fact, become defective at various points along the wires.   The testimony of defendant's witnesses does not in any manner contradict this proof, but on the contrary, strongly supplements and corroborates it.   (a)   There was ample evidence that deceased received an electric shock from contact with the defendant's wire.   Dwyer v. Buffalo Electric Co., 46 N. Y. Supp. 874; Buesching v. St. Louis Gas Light Co., 73 Mo. 219.   (b)   The mere fact that deceased received an electric shock from contact of the wire in his hand with defendant's wire is prima facie proof of negligence.   The doctrine of *res ipsa loquitur* applies. Snyder v. Wheeling El. Co., 43 W. Va. 661; Clarke v. Nassau El. Co., 41 N. Y. Supp. 78.   (c)   But in this

case it is not necessary to rely upon the doctrine of *res ipsa loquitur*. There was direct proof of negligence, and it was not necessary to prove the exact point of contact, nor to show in detail the extent·of the defect in the insulation. Griffin v. United Elec. Lt. Co., 164 Mass. 492; Schultz v. Faribault Con. & Gas Co., 82 Minn. 100. (4) There is no evidence of contributory negligence such as could, as a matter of law, bar plaintiff's recovery, and that question was fully and fairly submitted to the jury. O'Mellia v. Railroad, 115 Mo. 205; Giraudi v. Elec. Imp. Co., 107 Calif. 120; Griffin v. United El. Lt. Co., 164 Mass. 492; Dwyer v. Buffalo Genl. Elec. Co., 46 N. Y. Supp. 883; Barry v. Railroad, 98 Mo. 62. (5) There is no claim made by appellant that plaintiff's first instruction does not state the law sufficiently favorable to it, and the law, as stated, is properly applied to the facts proved. Defendant's theory of the case was correctly presented to the jury in its own instructions. State ex rel. v. Hope, 102 Mo. 426; Henry v. Railroad, 113 Mo. 536; Spillane v. Railroad, 111 Mo. 565; Muehlhausen v. Railroad, 91 Mo. 346; McGrew v. Railroad, 109 Mo. 590. (6) Plaintiff's third instruction lays down an abstract proposition of law, which is correct under the authorities cited by appellant and additional cases cited herein. It does not purport to cover the whole case and authorize a recovery, and must be read in connection with the other instructions. It was no more than saying that Geismann had a right to presume, from the fact of apparent insulation, that defendant discharged its duty by properly insulating the wire. Clements v. El. Lt. Co., 44 La. Ann. 692; Newark El. Lt. Co. v. Garden, 78 Fed. 74; Perham v. Portland Gen. Elec. Co., 33 Oregon 451; McLaughlin v. Light Co., 100 Ky. 173; Perrette v. Kansas City, 162 Mo. 238; Estes v. Fry, 22 Mo. App. 88; Alberger v. White, 117 Mo. 362; Noble v. Blount, 77 Mo. 240. (7) The appellant argues that the fifth instruction given at plaintiff's request is erroneous in

that it fails to furnish the jury a proper basis or ground upon which to compute plaintiff's damages, and cites a number of opinions of the Courts of Appeal in support of its argument. This court has expressly approved the instruction in Barth v. Railroad, 142 Mo. 555; Browning v. Railroad, 124 Mo. 55; Tetherow v. Railroad, 98 Mo. 74. (8) The defendant being found maintaining defective and non-insulated wires, carrying a dangerous and deadly voltage of electricity in a place where it is apparent to ordinary prudence that mechanics must go from time to time, should not be heard to say that it could not reasonably have anticipated any such accident as befell the deceased. His death was a probable and natural result of its negligence. Clements v. Electric Light Company, 44 La. Ann. 692; Perham v. Portland Gen. Elec. Co., 33 Oregon 471.

BURGESS, J.—This is an action by plaintiff, who is the widow of Bernard Geismann, against defendant company to recover five thousand dollars damages for the negligent killing of her husband in the city of St. Louis on January 24, 1898. At the time of the accident the deceased was a laborer engaged in hanging and removing signs. The defendant at that time was a lighting corporation engaged in supplying electric light and electric power to consumers in the city of St. Louis. The deceased was an employee of a concern known as Schurk General Iron Works in the capacity of laborer, and as such it was his duty to hang or remove signs in different parts of said city. He was sent by his employers with other workmen to remove a sign which was hanging in front of the store numbered 111 North Broadway in said city which was occupied by a tailor, doing business under the name of "Brooks, the Tailor."

The petition sets out several ordinances of the city of St. Louis regulating the placing of electric wires,

etc., and then alleges their violation by defendant, but as they were eliminated from the case by the ruling of the court, it is unnecessary to say more with respect to them. The case, therefore, rests on the subsequent averments of the petition of the defendant's negligence, which are, that while the deceased, without negligence on his part, was on the day mentioned, engaged in the line of his duty in removing the sign, ''one of the loosened wires with which the sign had been attached to the building immediately over the front of said store, came in contact with one of said wires of defendant, upon which said wire the insulation had, through negligence and carelessness of the defendant (and in violation of the said ordinances and provisions aforesaid) been permitted to become out of repair and worn off to an extent that the dangerous and deadly electric current passing through the same had become exposed and dangerous to those required to be thereabout, and in consequence thereof the said Bernard Geismann received an electric shock from said exposed current which caused him to lose consciousness, thereby precipitating him upon his head to the stone pavement some fifteen feet below, and inflicting injuries by reason whereof he died on February 3, 1898; that said wire had, through the negligence of defendant, been permitted to become out of repair and the insulation thereof to be worn off and the dangerous current passing through the same to be exposed for a long time prior to January 24, 1898, which facts defendant knew, or, by the exercise of ordinary care on his part, might have known, but that the said Bernard Geismann, owing to his inexperience with electric wires and currents did not know, and by the exercise of ordinary care on his part could not have discovered.''

The answer admitted the defendant's corporate existence, and put in issue all other allegations of the petition; and further stated (1) that the deceased did not receive a shock from an electric wire that

caused him to fall, (2) that he was negligent in approaching the wires mentioned in the petition, because they were strung far above the reach of persons passing along the sidewalk, and if said wires were bare of insulation, the deceased, by the exercise of ordinary care could have known that fact, and he was, therefore, negligent in approaching the wires, for the purpose he did, without first assuring himself that the insulation thereof was in good condition, and (3) that he was guilty of negligence in approaching defendant's said wires, they being of the size and appearance of those usually employed to conduct electric currents of high tension and of dangerous character, and then handling other wire without first providing himself with a coat, gloves and footgear of rubber. All the new matter of the answer was denied by the reply.

The facts as disclosed by the evidence are about as follows:

Deceased was at the time of his injury thirty-seven years of age and was earning nine dollars per week in putting up and taking down signs. He had a wife and four children who were dependent upon him for support. On the day of the accident deceased and two other men were sent by his employer to take down a wooden frame, canvas-covered sign, about three feet in width and ten feet in length, and weighing twenty-five or thirty-five pounds. The sign was suspended about twenty-two feet from the sidewalk, and at the top of the first story of a building abutting on the public street. The back, or lower part of the sign, was nailed to the tailor's sign, and the front, or upper side, was supported by guy wires fifteen or eighteen feet long, which were attached to the building in the recesses on either side of the bay window. The front of the building was twenty-six feet in length, on a north and south line, with a bay window about eight feet wide, extending out about two feet eight inches from the second-story line. The sign in question had been

taken off the building and replaced three or four times, and it had been up only four to six weeks when the deceased and his companions were sent to take it down. There was evidence that Schurk, deceased's employer, had repeatedly cautioned his men, among them the deceased, to "take care of electric wires about their work," and that the deceased had worked about electric wires in putting up and taking down signs once or twice a week during the time he was in that employment. Corrigan, with whom the deceased had worked, did not know whether he knew the danger of electricity—they had never talked about the danger of electricity. It was a bright, dry day. Defendant introduced evidence tending to show that rubber gloves, coat and boots were a safeguard to persons working about electric wires, and that the deceased had not provided himself with such clothing. The plaintiff's witnesses testified that sign-hangers could hardly wear rubber coats, gloves and boots at their work, and that such clothing was never worn by men engaged in their occupation. The defendant's high voltage electric lighting wires were strung along the iron cornice, above, behind and beneath the sign which was to be removed and the tailor's sign just below it. But the evidence tends to prove that when the deceased and his companions, Corrigan and Meyer, arrived at the building, Corrigan put a ladder against the front wall about three feet from its south line and "when the ladder touched the [tailor's] sign there was a little flash of electricity," and they moved it north eight or ten inches "so the wire wouldn't ground." Corrigan called his fellow-workmen's attention to that flash— told them to be careful. Then he and the deceased went up the ladder and loosened the south end of the sign. . Meyer remained on the pavement to act as they lowered it to him. Meyer received the south end of the sign as it was let down, on his shoulder, and Geismann and Corrigan went to the north side of the bay.

window to cut the guy wires—the remaining attachment of the sign. Each looked at the electric light wires on that side of and about the bay window and "they appeared to be all right." Corrigan testified "that apparently the wires looked all right," and he said to Geismann, relative to the wire, "it appears to be all right."

There was a recess on the cornice just north of the bay window, in which Corrigan and the deceased stood. It was two or three feet deep and three men could stand there. Corrigan cut the guy wires north of the bay window and handed them instantly to the deceased, while Meyer held the sign below. Geismann had almost no weight to support—only to keep the sign from toppling till Corrigan could go down the ladder to the sidewalk. As Corrigan turned to go down the ladder deceased cried "Oh," which attracted his attention, and he turned back towards Geismann and saw a little spark, and Geismann was falling. Corrigan saw the flash and thought the loose end of the wire in Geismann's hand came in contact with the defendant's electric wire. Meyer saw the spark as Geismann cried, and he thought it came from the loose end of Geismann's wire touching defendant's electric wire. The deceased fell to the pavement alongside of and eight inches from the ladder, and he could have caught it by reaching out his hand as he went down. He made no effort, whatever, to catch anything to save himself. He was about ten feet from the north line of the building when he fell and he had stooped slightly, and back about two feet from the cornice, holding the north guy rope, one end of which was attached to the disconnected sign, and about seven or eight feet of the loose end of which was above his hands.

The deceased fell to the sidewalk and sustained a severe fracture of the skull. A clot of blood formed on his brain, and he died nine days later without regaining consciousness.

It appears that he had an abundance of room, and did not need to hold to the building to retain his balance and he had nothing in his hands except the guy wire. This guy wire held by Geismann could not have touched the defendant's wire at the point where the ladder was first put up and the sparks flashed from the wire. That was about fifteen feet from where Geismann stood when he was shocked; and it was around on the opposite side of the bay window. Besides, the loose wire extended only about seven or eight feet beyond his hands.

The hands of the deceased were very hard, and they were contracted—drawn up and clinched after the accident as if he were trying to hold something; he had a wire scar on the inside base of the fingers of his left hand. The evidence shows that an electric shock would cause contraction of the muscles, and the burn would show a white charred appearance. That "the skin would be dry and white—a white line would be such as I would expect to find on the hand from grasping a wire carrying electricity."

The evidence is conflicting as to the number of defendant's wires that were on and about this first-story cornice on January 24, 1898. Schurk and Corrigan both testified that they examined the place after Geismann's death, and that there was an electric wire back of the sign, and extending to the building north, that the model used in evidence did not show. The evidence was also conflicting as to the condition of the wires, and the amount of repairing that was done on them immediately after the shock to Geismann. Corrigan testified for plaintiff that "the electric wire behind the sign looked like a second-hand wire to me." Q. "You have seen enough electric light wires to be able to tell?" A. "I have seen enough to know the wires." O'Reilly, supervisor of city lighting, called by the defendant, testified as follows as to the placing of the wires on top of and behind the signs in question: "The whole gen-

eral plan of bringing wires into buildings and bringing them behind signs at all is improper construction; that is not the proper way to construct wires of that character.'' And he further stated as to his examination of those wires: ''I say I found the electric wires in fairly good condition for wires that are placed on signs. You know they are not put in in the manner usual for constructing electric wires. They were placed behind this sign on the tailor shop. For wires of that kind they were in fairly good condition. It is very difficult to keep wires of that kind in good condition.'' The wires had been up for some time.

It appears that when Corrigan and Geismann went up on the cornice the insulation was off the wire in two places, near the south line of the building, but the wires appeared to be all right on the north side—north of the bay window. It also appeared that the wires were in such condition four months prior to this accident; that Louis Scherd, while engaged in taking down the same sign, saw places on the south side of the building where the insulation was off of these wires, and he received a shock caused by the wire supporting the sign getting around the electric light wire on the north side of the bay window—the side on which Geismann was shocked. He described the character of construction of that wire as follows: ''Mr. Scherd, will you point out to the jury where the insulation was off that you saw? A. Right here. This is the iron here. That holds the back of the [tailor's] sign up. There are three of them, one at each end; about three or four feet from the end, and one in the center. This wire has been a kind of slack, loose, and has been rubbing on this iron here. The wind made it rub on this wire, and that is how the insulation came off.''

Just after the accident to Geismann, six or seven electric light men appeared and they worked along the defendant's wires and taped two places in front of the

building.  J. F. Evans testified to the taping of two places.

At the request of plaintiff and over the objection of defendant, the court instructed the jury as follows:

"1.  The court instructs the jury that if they find from the evidence that on January 24, 1898, the deceased, Bernard Geismann, was in the line of his duty as a laborer or sign-hanger, engaged in removing a sign at premises No. 111 North Broadway in the city of St. Louis; and if you further find that while so engaged and without fault or negligence on his part the wires with which said sign had been attached, if any, came in contact with the wires of defendant through which an electric current was then passing, and if you further find that the insulation, if any, on said wire had become out of repair and worn off to an extent to expose the electric current, if any, passing through the same, and if you further find that the defendant knew, or by the exercise of ordinary care on its part, could have known that said insulation, if any, had become out of repair and worn off, if you find that it was out of repair and worn off, and that the said deceased did not know or by the exercise of ordinary care could not have discovered it, and if you further find that because of the exposure, if any, of the electric current passing through said wire, the said deceased received an electric shock and lost his consciousness, and if you further find that by reason thereof he was precipitated upon his head to the stone pavement below and sustained such injuries, if any, that as a direct result thereof he died on the third day of February following, then you will find a verdict for the plaintiff.

"2.  The court instructs the jury that it was the duty of the defendant to so insulate or protect the wire in question as to make it reasonably safe to those who may be brought in contact with it, and if they should find that the deceased, Bernard Geismann, came in contact with said wire of the defendant, and if you find

that defendant failed to so insulate or protect the said wire as to make it reasonably safe to those who may be brought in contact with it, and if you further find that by reason of the failure, if any, to insulate said wire, the said deceased received an electric shock, without any negligence on his part, and if you further find that by reason of such shock, if any, the said deceased lost consciousness and fell to the ground below and was injured, and if you find that he died as the direct result of such injuries, if any, then you will find a verdict for the plaintiff.

"3. The court instructs the jury that if they believe from the evidence that the said wire at the place where deceased was standing at the time he received his injuries, if any, had all the appearance of having been properly insulated, that this was then an invitation or inducement to said deceased to risk the consequences of contact with the same in the performance of his work in lowering the sign in question.

"4. The court instructs the jury that if at the time of, and immediately preceding, the injury, if any, to the deceased, Bernard Geismann, he was in the exercise of such care as ordinarily careful and prudent persons usually exercise under the same or similar circumstances, then he was not guilty of contributory negligence.

"5. The court instructs the jury that if you find for plaintiff, you may in your verdict, give her such damages, not exceeding five thousand dollars, as you may deem fair and just under the evidence in the case, with reference to the necessary injury resulting to her from the death of her husband."

The defendant upon its part prayed the court to instruct the jury as follows:

"2. If the jury believe from the evidence that plaintiff's deceased husband and the defendant were both guilty of negligence which directly contributed to the injury, then the verdict should be for the defendant.

"3. If the jury believe from the evidence that the injuries to plaintiff's husband resulted from an accident, the true cause of which the jury can not determine from the evidence, then the verdict should be for the defendant.

"9. The court instructs the jury that there is no evidence before them in regard to the ordinances pleaded, or the acceptance thereof, and the jury will disregard them entirely."

Which request the court granted, and gave the instructions.

The defendant further asked the court to give the following instructions:

"4. The jury are instructed that the charge of negligence, made by plaintiff against defendant by this action, must be proved to the satisfaction of the jury by a preponderance of the evidence. The jury have no right to presume negligence; and if the evidence does not preponderate in favor of plaintiff, then the verdict should be for the defendant.

"5. The jury are instructed that if they believe from the evidence that plaintiff's husband was an experienced sign-hanger, and experienced in taking down signs in St. Louis, and knew of the danger of coming in contact with electric light and other wires in the city of St. Louis, and that he either saw an electric flash from defendant's wire some time before he went upon the cornice, from which he fell, or was told thereof by his fellow-worker, and cautioned against the danger therefrom, and thereafter from his own carelessness in handling uninsulated wires, permitted them, or either of them, to come in contact with defendant's wires, then the verdict should be for the defendant.

"6. The court instructs the jury that it was the duty of Bernard Geismann, plaintiff's deceased husband, to exercise ordinary care upon his own part to avoid injury from any wire he was handling coming in contact with defendant's wire; and

if the jury believe from the evidence that he knew, or if in the exercise of ordinary care in his vocation he would have known his liability to injury from defendant's wire, and that the wearing of rubber coat, boots and gloves, or either of them, would have lessened his peril; and if the jury believe from the evidence that the wearing of some or all of these articles would have been a reasonable and proper precaution for him to take for his own safety, and the failure of said Geismann to wear some or all of those articles contributed to his injury, then the jury will find for the defendant.

"7. The court instructs the jury that if they believe from the evidence that plaintiff's husband, Bernard Geismann, knew, or by the exercise of ordinary care could have discovered, his liability to injury from defendant's wire, it was his duty to use what would be reasonable care under the circumstances to avoid injury therefrom; and if the jury believe from the evidence that he failed to exercise reasonable care under the circumstances, and that his failure to use reasonable care contributed to his injury, then the verdict should be for the defendant.

"8. The jury are instructed that if they believe from the evidence that plaintiff's husband was a man of ordinary intelligence, and experience, in putting up and taking down signs in the city of St. Louis, and knew or by the exercise of ordinary care would have known, of the danger resulting from contact of uninsulated wire with a wire of high electric power, and that defendant's wire was in plain sight, and was seen by plaintiff's husband, or that he would have seen it if he had been exercising ordinary care for his own safety, and that he, under those circumstances, negligently allowed an uninsulated wire in his own hands to be drawn across or come in contact with defendant's said wire, then the verdict should be for the defendant.

"10.   The court instructs the jury that under the pleadings and the evidence in this case they should find for the defendant."

Which instructions the court refused, to which refusal of the instructions thus prayed, the defendant, by his counsel, then and there duly excepted.

The court of its own motion gave the following instructions, having modified instructions offered by defendant, so as to read as follows:

"4.   The jury are instructed that to entitle plaintiff to recover the charge of negligence made by plaintiff against defendant by this action must be proved to the satisfaction of the jury by plaintiff by a preponderance of the evidence.   The jury have no right to presume negligence; and if the evidence does not preponderate in favor of plaintiff, then the verdict should be for the defendant.   By the term 'preponderance of evidence' is meant the greater weight of the evidence; and in determining the greater weight of the evidence, the jury should not simply consider the number of witnesses adduced by either side, but should also consider the credibility of the witnesses and all the facts and circumstances proven in the case.

"5.   The jury are instructed that if they believe from the evidence that plaintiff's husband was an experienced sign-hanger, and experienced in taking down signs in St. Louis, and knew of the danger of coming in contact with electric light and other wires in the city of St. Louis, and that he either saw an electric flash from defendant's wire some time before he went upon the cornice from which he fell, or was told thereof by his fellow-worker and cautioned against the danger therefrom; and thereafter, from his own carelessness in handling uninsulated wires, permitted them, or either of them, to come in contact with defendant's wire, whereby the alleged shock resulted, then the verdict should be for the defendant.

"6.   The court instructs the jury that it was the
duty of Bernard Geismann, plaintiff's deceased hus-
band, to exercise ordinary care upon his own part to
avoid injury from any wire he was handling coming
into contact with defendant's wire, and if the jury be-
lieve from the evidence that he knew, or if in the ex-
ercise of ordinary care in his vocation he would have
known his liability to injury from defendant's wire,
and that the wearing of rubber coat, boots and gloves
or either of them, would have lessened his peril, and
if the jury believe from the evidence that the wearing
of some or all of these articles would have been a
reasonable and proper precaution for him to take for
his own safety under the circumstances and in his sit-
uation as sign-hanger, and that the failure by said
Geismann to wear some or all of those articles di-
rectly contributed to his injury, then the jury will
find for the defendant.

"7.   The court instructs the jury if they believe
from the evidence that plaintiff's husband, Bernard
Geismann, knew, or by the exercise of ordinary care
could have discovered, his liability to injury from de-
fendant's wire, it was his duty to use what would be
reasonable care under the circumstances to avoid in-
jury therefrom; and if the jury believe from the evi-
dence that he failed to exercise reasonable care under
the circumstances, and that his failure to use reason-
able care contributed directly to his injury, then the
verdict should be for the defendant.

"8.   The jury are instructed that if they be-
lieve from the evidence that plaintiff's husband
was a man of ordinary intelligence and experience in
putting up and taking down signs in the city of St.
Louis, and knew, or by the exercise of ordinary care
would have known, of the danger resulting from
contact of uninsulated wire with a defective or non-
insulated wire of high electric power, and that de-
fendant's wire was at some point or points not prop-

erly insulated, and was in plain sight, and was seen
by plaintiff's husband, or that he would have seen it
if he had been exercising ordinary care for his own
safety, and that he, under those circumstances, neg-
ligently allowed an uninsulated wire in his own hands
to be drawn across or come in contact with defend-
ant's said wire, then the verdict should be for the de-
fendant.''

To the giving of which instructions the defendant
duly excepted at the time.

Under the instructions of the court the jury ren-
dered a verdict for the plaintiff for the sum of $5,000.
In due time defendant moved to set the verdict aside
and for new trial, which being overruled, the company
brings the case to this court by appeal for review.

The petition upon which the case was tried is
bottomed upon common-law negligence setting forth
specifically the acts constituting such negligence and
clearly states a cause of action.

Defendant says that the evidence shows clearly
that the deceased was guilty of contributory negli-
gence and for that reason its demurrer to the evidence
should have been sustained, but we are of the opinion
that under the evidence as disclosed by the record,
without again stating the facts in detail, it was suffi-
cient to take the case to the jury and that the demurrer
thereto was properly overruled.

The first instruction given in behalf of plaintiff
is criticised upon the ground that ''it is too general,
in that it does not specify that the defendant was
negligent in not remedying the defect after it had
notice, or a reasonable time had elapsed after the
insulation became out of repair and worn off to infer
notice, but the mere fact of its being out of repair and
worn off makes the defendant liable, and does not
restrict the injury of deceased to a wire in his hand
coming in contact with defendant's wire where insu-

lation was out of repair and worn off, nor does it consider the defense that it was by the act of Geismann and his associates that the wire had been burned, the insulation deteriorated and burnt off." Electricity is one of the most dangerous agencies ever discovered by human science, and owing to that fact it was the duty of the electric light company to use every protection which was accessible to insulate its wires at all points where people have the right to go, and to use the utmost care to keep them so; and for personal injuries to a person in a place where he has a right to be without negligence upon his part contributing directly thereto, it is liable in damages. [McLaughlin v. Louisville Electric Light Co., 100 Ky. 173.]

The deceased was, at the time he received the shock which caused his death, in a place where his duty required him to be, and it was the duty of the defendant in the exercise of even ordinary care and foresight to know that sign-hangers, painters, carpenters and other mechanics would be required, as occasion might require of them in the pursuit of their respective occupations, to come in proximity to its wires constructed and maintained on the signs and cornice in front of the building where the accident occurred. As was said in Overall v. Louisville Electric Light Company, 47 S. W. 442: "Appellant at the time he was struck was in a place where his business required him to be, and where he had a right to be, and it was the duty of the electric light company to know that linemen of the telephone company would have to come into close proximity to its wires in attending to their duties, and it was its duty to use every protection which was accessible to insulate its wires at that point, and at all points where people have a right to go for business or pleasure, and to use the utmost care to keep them so, and for personal injuries resulting from its failure in that regard, it is liable in damages."

Geismann v. Missouri-Edison Electric Co.

The duty of defendant in the maintenance of its wires under circumstances very similar is well presented in Clements v. Electric Light Co., 44 La. Ann. 692:

"The wire of defendant was spliced and was not insulated as required by the ordinance. It passed over a roof, to which people in adjoining rooms had access, and where in the course of time mechanics must go to make repairs, or laborers to sweep off or clean the roof. It was the duty of the company, independent of any statutory regulation, to see that their lines were safe for those who by their occupation were brought in close proximity to them. In this respect and in this particular case we are of the opinion that the defendant's negligence caused the death of Clements. But, notwithstanding this fault of defendant, if the evidence shows that the plaintiff himself was guilty of negligence, contributing to the injury, he can not recover. The question is whether the act of the party injured had a necessary tendency to expose him directly to the danger, which resulted in the injury complained of. If the plaintiff could, by the exercise of reasonable care, at or just before the happening of the injury to him, have avoided the same, he can not recover damages for the injury. When the action of both parties must have concurred to have produced the injury, it devolves upon the plaintiff to show that he was not himself guilty of negligence. He must show affirmatively that he was in the exercise of due and reasonable care when the injury happened. This proof need not be direct, but may be inferred from the circumstances of the case. The deceased (Clements) was lawfully on the gallery roof. He was engaged in a service that necessarily required him to run the risk of coming in contact with defendant's wires, either by stepping over them or going under them. It is probable that the latter mode was the most convenient, and there is no evidence that in

so doing he incurred any greater risk. The wires were visible and to all appearance were safe. The great force that was being carried over the wire gave no evidence of its existence. There was no means for a man of ordinary education to distinguish whether the wire was dead or alive. It had all the appearance of having been properly insulated. From this fact there was an invitation or inducement held out to Clements to risk the consequences of contact. He had the right to believe they were safe, and that the company had complied with its duty specified by law. He was required to look for patent and not latent defects. Had he known of the defective insulation and put himself in contact with the wire, he would have assumed the risk. The defect was hidden, and the insulation wrapping was deceptive. It is certain, had it been properly wrapped, Clements would not have been killed. His death is conclusive proof of the defect of the insulation and the negligence of defendant. . . . Clements' attention was not directed to any particular danger from the wires. No apparent defect was pointed out to him. The admonition to him was only of a danger which he knew to exist . . . before he advised him to be cautious of going near the wires, or to keep away from them. . . . The electric wires gave no signal of danger. Listening would not have revealed any danger. It is hidden and silent. But they are disarmed of danger if properly insulated. By looking one can see if there are evidences of insulation. If there are evidences of it, and no defects are visible after careful inspection, one whose employment brings him in close proximity to the wire, and which he has to pass, either over or under it, is not guilty of contributory negligence by coming in contact with it, unless he does it unnecessarily and without proper precautions for his safety. It can not be said that when Clements went on the roof to repair it, he went into the presence of known dan-

ger and assumed the hazards of the employment. The employment was not dangerous. The wires, if properly insulated, as above stated, would have been harmless.''

So in Griffin v. Electric Light Co., 164 Mass. 492, a tinsmith while engaged in placing an iron conductor on a building, was injured by receiving a shock from an electric light wire running along the side of a building, about twelve feet from the ground, by reason of the conductor which he was handling coming in contact with a place on the wire where the insulating material had been worn off, and it was held that the question of defendant's negligence and the due care on the part of the plaintiff were for the jury, and that it could not be said as a matter of law that the condition of the wire was so apparent that the plaintiff must or ought to have seen it, although the accident happened in the forenoon; and that, while an expert might consider it dangerous to touch any wire unless he knew it was a harmless one, no such degree of care could be required of the plaintiff, who was not an expert, but that the question of his want of care was for the jury. ''Applying the doctrine of these cases, and the underlying principles by which they are controlled, to the case in hand it is clear that no error was committed in overruling the motion for nonsuit. It is true that in cases referred to, the actions were grounded in negligence in using improper insulated wires, but in each instance the judgment of the court proceeds on the theory that it is a want of due care for a company handling and transmitting the highly dangerous force of electricity to use a wire known, or which reasonably ought to have been known, to be dangerous, at a place where others are lawfully entitled to be. The same principle governs here. Although the wires of the defendant company were insulated, it is admitted that such insulation was no protection whatever to persons coming in contact

with them, and hence the negligence of the defendant is equally as great, if not greater, than if the danger had been from insufficient, or want of, insulation. The apparently perfect insulation was calculated to deceive, and to cause one unfamiliar with the facts to suppose the wires safe. It acted as an invitation to persons at work in and among the wires to risk the consequences of contact therewith. . . . The law imposes upon the company the duty of exercising the utmost care and prudence to prevent such injury.''

As announcing the same doctrine we refer to Newark Electric Light and Power Co. v. Garden, 78 Fed. 74; Illingsworth v. Electric Light Co., 161 Mass. 583; Ennis v. Gray, 87 Hun 355; Perham v. Portland Electric Co., 33 Ore. 451; Giraudi v. Electric Imp. Co., 107 Cal. 120; Haynes v. Gas Co., 114 N. C. 203.

It follows from these authorities that it was defendant's duty, in the first place, to use every protection which was reasonably accessible to insulate its wires at the point of contact or injury in this case, and to use the utmost care to keep them so, and the fact of the death of Geismann is conclusive proof of the defect of the insulation and negligence of the defendant, and as to whether he was guilty of contributory negligence or not was a question for the jury.

Instruction numbered two, given in behalf of plaintiff, is said to be erroneous, because it ''injects a duty in the case for the defendant to protect the wire,'' a duty not alleged in the pleadings, and makes it incumbent on defendant to keep it reasonably safe.

The allegations of the petition are broad enough to justify the instruction, which is in accordance with what we have said, *with the exception* of the duty of defendant to keep its wire insulated so as those in the discharge of their duties might not be injured by coming in contact with it, and in this respect more favorable to defendant than the law authorizes, in

that it only requires that its wire be kept reasonably safe.

Plaintiff's third instruction is also said to be erroneous, in that it tells the jury that if the wire, where deceased was standing, had all the appearance of being properly insulated, this was an invitation or inducement to him to risk contact with it. While this instruction simply announces an abstract proposition of law, it is in accordance with what is said *arguendo* in Clements v. Electric Light Co., supra; Newark Electric Light and Power Co. v. Garden, 78 Fed. 74; Perham v. Portland Electric Co., 33 Ore. 451; and McLaughlin v. Louisville Electric Light Company, supra, but as it does not purport to cover the entire case and authorize a recovery, the judgment should not be reversed upon that ground alone, for when considered in connection with all the instructions in the case, as it should be, it is, we think, non-prejudicial.

The fifth instruction given on the part of plaintiff is said to be erroneous upon the ground that it fails to state to the jury the proper grounds on which to base plaintiff's damages. No instruction was asked by defendant on this feature of the case. An instruction couched in substantially the same language was approved by this court in Browning v. Railroad, 124 Mo. 55, with respect to which it was said:

"The defendant asked no instruction on the measure of damages whatever. No attempt was made by it to point out the proper elements of damage in such cases or to modify the general language of the instruction. The instruction is not erroneous in its general scope; and if, in the opinion of counsel for defendant, it was likely to be misunderstood by the jury, it was the duty of the counsel to ask the modifications and explanations in an instruction embodying its views. The court is not required in a civil case to

instruct on all questions, whether suggested or not; and as there is nothing in the amount of the verdict to indicate that the jury were actuated by any improper motive in their assessment, the general nature of the instruction is no ground for reversal."

So in Barth v. Railroad, 142 Mo. 535, following the Browning case, an instruction in almost *exactly* the same language as the one given in this case, was approved, the court holding that the generality of the instruction would not constitute reversible error, as the right was reserved to defendant to point out the elements limiting the damages in its own instructions.

No error was committed in modifying the sixth and eighth instructions asked by defendant, as by so doing the jury could not have been misled, or defendant prejudiced thereby.

Nor is there merit in the contention that the verdict is excessive or the result of passion or prejudice. There is nothing disclosed by the record indicative of either. The verdict met with the approval of the court before whom the case was tried and will not, under the circumstances, be disturbed by us upon either of these grounds.

The weight of the evidence was for the consideration of the jury under the instructions of the court, which covered every phase of the case and are free from objection.

It was not necessary in order to plaintiff's recovery to prove that at the exact point where the contact occurred the insulation was off the wire. If the defective insulation caused the injury without fault on the part of plaintiff, as he had the right to be where he was at the time of the injury, that was sufficient. There were two wires, one behind the sign and below the top of it, while the one that caused the injury was strung in the space between the sign and cornice along the top of the sign and level with the cornice.

The verdict is well supported by the evidence, and the record is free from substantial error. The judgment should be affirmed. It is so ordered.

All of this Division concur.