## NANCY McDANIELS, Respondent, v. ROYLE MINING CO., Appellant.

### Kansas City Court of Appeals, February 27, 1905.

1. **MINES AND MINING:** ·Dependent Mother: Other Support: Statutory Construction. Where a mother is wholly without means and formerly lives with other children, and before and at the time of her son's death is supported by him, and thereafter returns to her other children, she was a dependent on the deceased son within the meaning of section 8820, Revised Statutes 1899, and the fact that she found another to support her after his death can make no difference.

2. ————: Caving Roof: Adjoining Mine: Conflict of Evidence: Appellate Practice. Where there is conflict of evidence as to whether the alleged caving occurred in defendant's mine or the adjoining mine, the question is for the jury and appellate courts are bound thereby.

3. ————: Props: Statutory Construction. Section 8822, Revised Statutes 1899, requires the mining companies to furnish and send down into the mine sufficient supply of timber so that workmen at all times might be able to properly secure the workings from caving in. This is an imperative requirement and not a question of reasonable diligence, and on evidence extraordinary means were required for safety and timber should have been furnished to meet the requirement of the situation.

4. ————: ————: ————: Care. While the statute does not make the mining company an insurer it does insure the miner means to protect himself to the fullest extent; the term "properly secure" does not mean reasonably safe, but safe from danger and extraordinary care is required of the company.

Appeal from Jasper Circuit Court.—*Hon. J. D. Perkins,* Judge.

AFFIRMED.

*Howard Gray* and *Frank L. Forlow* for appellant.

Section 8820, R. S. 1899: "In case of death a right of action shall accrue to, . . . or to any person or persons who were before such loss of life dependent for support on the person killed, for a like recovery of damages." (2) Section 8822 provides that the owner, agent or operator of any mine shall keep a sufficient supply of timbers when required, to be used as props so that workmen may, at all times be able to properly secure said workings from caving in, and it shall be the duty of the owner or agent to send down all such props when desired. (3) It may be conceded, that if the defendant complied with the provisions of section 8822, then the plaintiff cannot recover in this action. Boemer v. Lead Co., 69 Mo. App. 601; Bowerman v. Mining Co., 98 Mo. App. 308. (4) It must appear by the evidence that the plaintiff was at the time of the death of her son dependent in fact upon him for support, and in this case the plaintiff's evidence does not so show. Bowerman v. Mining Co., 98 Mo. App. 315. (5) Taking out the incompetent evidence offered by plaintiff, which did not tend to show a violation of section 8822, and the evidence of plaintiff's witnesses, as well as for the defendant, shows that the defendant at no time violated that section of the statute, as was found in the Bowerman case, supra, but that the defendant with fidelity complied with the letter of the law. (6) If this verdict can stand under section 8822 and the evidence in this case then it is an impossibility for any company to comply with the provisions of that section of the statute. (7) Under the evidence of plaintiff, which was all of the evidence on this point, she was not

actually dependent upon her son for support at the time of his death, and not entitled to substantial damages. Bowerman case, supra.

*Blair, Decker & Blair* and *Gardner & Cameron* for respondent.

(1)    Plaintiff was dependent upon the deceased for her support and is entitled to recover. Bowerman v. Mining Co., 98 Mo. App. 308.    (2)    The evidence shows that defendant failed to send down into said mine a sufficient supply of timbers, and that the death of Marvin McDaniels was    the    result of said    failure. Therefore, plaintiff is entitled to recover.    Bowerman v. Mining Co., 98 Mo. App. 308; Boemer v. Lead Co., 69 Mo. App. 601.

BROADDUS, P. J.—This suit is brought under sections 8820 and 8822, Revised Statutes 1899, for damages for the death of plaintiff's son, Marvin McDaniels, who was at the time of his death about twenty years of age and unmarried.

The son was killed while in the employ of defendant as a miner in its mines near Duenwig, in Jasper county.    The negligence on which plaintiff seeks to recover was the failure of defendant to furnish a sufficient supply of timbers, when required, to be used as props by the miners so that they might be able to secure the safety of the mine from caving earth; and in failing to send such timbers down into the ground; and basing her right to recover on the claim that she was dependent upon her said son for support.

There was evidence that plaintiff was sixty-four years of age, a widow and without property; that the son provided her with provisions, clothing and house rent; that he was earning $2.25 a day and devoted it to the support of his mother and himself; and that he gave her in the way of such support about $250 in the course

of a year. The plaintiff, who was the only witness test-ifying as to that point, stated on cross-examination that her son had been at Duenwig about two years previous to his death, during which time he was working around the mines; that in December, before his death, plaintiff and one of her sons with his wife and infant child went to said place and rented a small house, and that de-ceased lived there with them, the two sons paying rent and housekeeping expenses; and that immediately after the death of her said son, Marvin, plaintiff went to La-clede county where she lived with her other children.

The mine in question was a zinc mine and it is con-ceded that the earth was soft and that timbers were necesary in the drifts to prevent a caving of the earth. Plaintiff's son was killed as the result of the falling of earth upon him while he was at work in said mine. But defendant contends that the caving of the earth which killed deceased did not come from defendant's mine but from that of the Red Bud mine, the two being in juxta-position. It was shown that there was a hole in the roof of defendant's mine some ten feet above the props and that it had not been what the miners call "timbered up" to the roof at said point and wedged in securely with cord wood; that the attention of defendant's superintendent was called to the matter some time be-fore the accident; and that dirt had been falling there, of which he had knowledge. There was further evi-dence tending to show that the proper way to secure earth of the nature in question was to wood or key it up to the roof, and that more timbers should have been used than were furnished; and that said superintendent was notified that more timbers were required, but they were not sent down. The defendant's evidence was strong that the caving of the earth was from the Red Bud mine, the lean of the timbers inspected after the accident indicating such to have been the fact. But witnesses, experienced miners, testified that the indica-tions were that the cavein occurred from defendant's

mine and was the result of the said hole in the roof being left insecure.

The jury returned a verdict for $1,500, whereupon plaintiff entered a remittitur of $500 and judgment was rendered in her favor for $1,000, from which defendant appealed. The position of appellant is that the plaintiff was not entitled to recover: first, because she did not show that she was dependent upon her said son for support; second, that the caving of the earth causing the accident came from the Red Bud mine; third, that it furnished all the timbers required for securing the safety of the miners.

Section 8820, Revised Statutes 1899, provides that, "for any injury to persons or property occasioned by a violation of article 2 on mines and mining, or a failure to comply with any of its provisions, a right of action shall accrue to the party for any direct damages sustained thereby; and in case of loss of life by reason of such violation or failure, a right of action shall accrue to the widow of the person so killed, his lineal heirs, or adopted children, or to any person or persons who were, before such loss of life, dependent upon the person or persons so killed, for a like recovery of damages." It seems clear under the evidence that before her son was killed plaintiff was dependent upon him for support as he was paying her house rent and buying her clothing and food from the time she moved to Duenwig up to the time of his death. The case is much stronger in that respect than that in Bowerman v. Mining Co., 98 Mo. App. 308, where it was held that there was sufficient evidence to send the case to the jury. Plaintiff was wholly without means and before she went to live at Duenwig she lived with and was supported by her other children; and after the death of her son, Marvin, she went back to them again for support. It seems that of all times she was dependent upon someone for support, and because she found another to support her after the death of her said son, can make no

difference if she was dependent on him at the time of the accident.

While it may be conceded that the circumstances tended strongly to show that the caving of the earth was from the Red Bud mine, still, there was also evidence of a persuasive character that it occurred in defendant's mine. It was, therefore, a question for the jury and we are bound by their conclusions. If the accident was the result of failure upon the part of defendant to furnish a sufficient supply of timbers when required to be used as props so that the workmen might at all times have been able to properly secure the workings from caving in, it was liable and plaintiff was entitled to recover. It is conceded by respondent that props were in place at the point where the caving occurred, but that it was not sufficiently propped to make it secure. The mere fact that props were used at the place will not excuse the defendant. The statute is very comprehensive in its language and it requires that defendant should furnish and send down into the mine a sufficient supply of timber so that the workmen at all times might be able to properly secure the workings from caving in, etc.

If the caving came from the hole in the roof because it was not properly secured and which required timber and the timber was not sent down into the mine, defendant is liable. The only question before the jury as to that issue being: Was the place properly secure and did defendant send down timber sufficient to secure it? Witnesses testified that the proper manner would have been to have keyed timbers against the roof. And it seems to us that this would have been the proper way to have proceeded. Timbers so placed would have been props in the sense of the word as used in the statute. If the caving was from the hole in the roof in defendant's mine the necessity did exist for additional timbers to make it secure.

When the desired amount of timbers are furnished

in the mine to properly secure the workings, the mineowner has performed his duty, and it is then left to the miners to use them for their own security. But they must be furnished with all the timbers necessary for that purpose, and the mineowner cannot excuse himself by furnishing what may be deemed ordinarily sufficient. This is not a question of reasonable diligence, but an imperative requirement of the statute for the preservation of the workmen engaged in hazardous labor. The condition of the roof showed that extraordinary means were required for safety and enough timbers should have been furnished to meet the requirement of the situation.

Defendant insists that if the judgment stands it results in making the mineowner an insurer for the safety of his miners. We do not think so. But the statute does insure the miner the means to protect himself to the fullest extent against cavings of the workings, leaving it to him, wisely, to use such means for his own protection. The term, "properly secure," is not used in a restrictive sense. It does not mean reasonably safe, but safe from danger; not absolutely safe, for that, perhaps, would be impossible, but such security as a reasonable and humane person, watchful of the almost constant peril to his workmen, would afford, commensurate with the impending or threatened danger. Extraordinary care is required of the mineowner. The case here is somewhat analogous in principle with that of Geismann v. Electric Co., 173 Mo. 654, and Winkelman v. Kansas City Electric Light Co., 110 Mo. App. 184.

The respondent's motion to dismiss the appeal is not well taken.

The cause is affirmed. All concur.