HENRY WELCH, Respondent, v. KANSAS CITY MIDLAND COAL & MINING COMPANY, Appellant.

Kansas City Court of Appeals, November 21, 1910.

1. **APPELLATE PRACTICE: Bill of Exceptions: Time for Filing Extended.** The order of appeal was made at the January term. Appellant was granted leave to file its bill of exceptions at the October term. There were three terms, January, May and October. Respondent contended that, under section 2029 R. S. 1909 (section 728, R. S. 1899) the circuit court had no power to extend the time to file the bill of exceptions beyond the next succeeding term of court (the May term). *Held.* that under section 2029, R. S. 1909, the length of time allowed beyond the term for filing a bill of exceptions must be left to the sound discretion of the trial court.

2. **MASTER AND SERVANT: Mines: Statutory Cages: Question for Jury.** Plaintiff was employed in mining coal in a newly opened mine operated by defendant. While being hoisted out of the shaft in a temporary box (which was not covered with boiler iron), plaintiff was injured. Plaintiff thereupon instituted this action for the breach of defendant's statutory duty under section 8456, Revised Statutes 1909, requiring that in every mine operated by shaft the proprietor shall "provide safe means of hoisting and lowering persons in a cage covered with boiler iron." The defense was that the mine was just being opened, and had not reached the point where it could be classed as a mine in operation, or where statutory cages could be installed and operated. *Held,* that whether the statutory duty applied was dependant upon the fact whether or not this was a mine in operation, which was a question for the jury.

3. ——: ——: ——. This statute being highly remedial, and for the benefit and protection of men engaged in a hazardous occupation must be liberally construed, so as to give the greatest effect to its beneficient operations. Therefore, the men employed in mining should have the protection of the statute, just as soon as cages, conforming to the specifications thereof, can be put in successful operation.

4. ——: ——: **Question for Jury: Prejudical Error.** Where the question was whether or not the mine was actually in operation, it was prejudicial error to refuse to submit to the jury under proper instructions, the issue whether or not the work had progressed to the point where it was practicable to install statutory cages.

5. **APPELLATE PRACTICE: Error in Instructions: Bill of Exceptions.** Defendant failed to make a preliminary objection to the giving of plaintiff's instructions, but merely excepted after said instructions were given. *Held*, that, although the instructions ought not to have been given, the error was not properly preserved in the bill of exceptions. The reason is that, where the trial court was not given a fair opportunity to correct its error at the time of its commission, it would be most unfair to permit a party to acquiesce apparently in the rulings of the court, and then after day had gone against him to complain of those rulings.

6. ——: ——: ——. Where defendant's instructions were wrongly refused, the defendant properly preserved the error by excepting to the ruling. To require a party whose own instructions are refused, to also make a preliminary objection would be absurd.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

Reversed and remanded.

*Campbell & Ellison* and *Higbee & Mills* for appellant.

*Fugate & Son, C. E. Murrell* and *Wilson & Clapp* for respondent.

JOHNSON, J.—This is an action prosecuted by a servant against his master to recover damages for per-

sonal injuries alleged to have been caused by a violation of the provision of section 8456, Revised Statutes 1909, which requires that in every mine operated by shaft the proprietor shall "provide safe means of hoisting and lowering persons in a cage covered with boiler iron so as to keep safe, as far as possible, persons descending into and ascending out of said shaft . . . provided that the provisions of this section in relation to covering cages with boiler iron shall not apply to coal mines less than one hundred feet in depth where the coal is raised by horse power." The answer was a general denial. A trial before a jury resulted in a judgment for plaintiff for thirty-one hundred dollars. Defendant appealed.

Before going to the merits of the case we shall dispose of a question of practice presented by respondent. The order of appeal was made February 21, 1910, at the January term of the circuit court of Adair county and appellant was granted leave "to file its bill of exceptions in this cause on or before or during the October term, 1910, of said circuit court." There are three regular terms of the Adair Circuit Court held respectively in January, May and October, and the point advanced by respondent is that the bill of exceptions cannot be considered for the reason that the circuit court had no power to grant time beyond the next term of court (the May term) in which to file the bill of exceptions. It is argued that the statute (section 728) "implies that where the bill is not and cannot be filed during the term time, the court has the power to allow further time, but that such time is limited, and must be a reasonable time in which to prepare and settle the bill; and that in the first instance the longest period that can legally be allowed is until the next regular term. In the event, however, that for some good cause shown, the bill cannot be filed within the time originally allowed, the court can extend the time. It will not do to say that the words 'or within

such time thereafter as the court may allow,' gives the court the right to allow any length of time it may see fit, for instance, a year or two years, or five years. There must, of necessity, be a limit.''

The statute contains no such restriction as that contended for by respondent. It provides (section 2029, Revised Statutes 1909): ''Such exceptions may be written and filed at the time or during the term of the court at which it is taken, or within such time thereafter as the court may by an order entered of record allow, which may be extended by the court or judge in vacation for good cause shown.''

The length of time to be allowed beyond the term for filing a bill of exceptions of necessity must be left to the sound discretion of the trial court. Of course if the trial court should abuse its discretion as respondent suggests might be done, such abuse could be reviewed and corrected in the appellate court. Very often the court knows that under existing conditions a bill of exceptions cannot be prepared for filing at the first succeeding term. The court stenographer may be ill or too much crowded with work that must be given precedence to furnish the transcript in time. We do not feel disposed to add a restriction on the discretion the court may exercise which is not imposed by statute and is not supported by any valid reason. The objection to the bill of exceptions is overruled.

Defendant is a corporation engaged in mining coal and plaintiff at the time of his injury, which occurred August 25, 1909, was a miner employed in mining coal in a newly opened mine known as Midland No. 3. He was being hoisted out of the shaft in a temporary box used for hoisting and was injured by a piece of falling timber which a carpenter at work building a structure called a ''tipple'' accidentally or negligently let fall into the shaft over the mouth of which the tipple was being built. It is conceded that the box or cage in which plaintiff was riding was not

covered with boiler iron and it is the contention of defendant that cages constructed according to the specifications of the statute had not been installed for the reason that the mine was just being opened and had not reached the point where it should be classed as a mine in operation, nor where statutory cages could be installed and operated. It is argued that the statute must be reasonably construed and that its provisions should not be extended to apply to mines in such preparatory stage of development that statutory cages, if installed, could not be operated or kept in place. The evidence of plaintiff tends to show that a shaft fourteen by seven feet had been sunk to a depth of one hundred and twenty feet, that a space twelve feet wide had been dug around the bottom of the shaft; that a sump, i. e., a place to hold the water coming into the shaft had been dug; that two entries each about one hundred and fifty feet long had been run out and two air courses made; that for a month preceding the injury some four hundred tons of coal had been mined and that cages complying with the statute could have been installed and put in successful operation long before plaintiff's injury.

On the part of defendant, the evidence tends to show that the shaft was ninety-four feet deep; that the entries were only about eighty feet long; that the tipple had not been completed and that the hoisting engines and machinery and all the equipment were temporary and were not what would be in use when the preparatory development work should be completed. The substance of this evidence is that the little mining of coal then in progress was but incidental to the opening of the mine and was not the main part, or an important part, of the operations then being conducted. The most important fact brought out by defendant is that the small cubic contents of the underground workings then completed were insufficient to absorb and dissipate the whole expansive force of the explosions of

powder necessary to be made from time to time; that the main shaft afforded the only vent for such force and that, had covered cages been installed, in compliance with the statute, the explosions necessarily would have wrecked or so greatly damaged them that their practical operation would have been an impossibility. The evidence of defendant is substantial, and we think raises an issue of fact to go to the jury. The statute being highly remedial and for the benefit and protection of men engaged in a hazardous occupation, must be liberally construed to give the greatest effect to its beneficent purposes. If this was a mine in operation the mandate of the statute was imperative and the cages covered with boiler iron should have been in operation. [Durant v. Mining Co., 97 Mo. 62; Lore v. Manufacturing Co., 160 Mo. 608; McDaniels v. Mining Co., 110 Mo. App. 706.]

In making application of the statute to a case such as the present where a mine is being opened up and the mining of coal is but an incident to the prosecution of necessary development work, the true construction of the statute leads to the conclusion that the men employed in mining should have the protection of the statute just as soon as cages conforming to the specifications thereof can be put in successful operation. To require the mine owner to install them at a time when they would be wrecked or disabled by the expansive force of necessary explosions would be unreasonable and, on the other hand, to say that the owner may delay their installation until such time as mining becomes the chief and not the incidental object of the operations might unnecessarily deprive miners of the protection of a wise and humane law during a period when it could be given them. Under this interpretation the conflicting evidence of the parties presents issues of fact for the solution of the triers of fact and the learned trial judge properly overruled the demurrer to the evidence. That he entertained a cor-

rect view of the case at the trial is shown by his re-
mark, preserved in the record, that ''The law makes
it an imperative duty to install and protect the cages
in all mines operated. It is a question whether this
was operated within the meaning of the law and that
is a question for the jury.''

But, afterward, in ruling on the instructions, the
court appears to have departed from this view, since
we find both in the instructions given at the request
of plaintiff and in those asked by defendant, which
were refused, the mine was treated as a mine in opera-
tion and the court refused to submit the issue of
whether or not the work had progressed to the point
where it was practicable to install statutory cages.
This was prejudicial error and the sole · remaining
question for our decision is whether or not that error
has been properly preserved for our consideration in
the bill of exceptions.

The record in question is as follows: ''Thereupon
the court gave to the jury the following instructions
for plaintiff.''    Then follow the instructions after
which is the recital: ''To the giving of which instruc-
tions and each of them the defendant excepted at the
time.''    Next is the statement: ''Defendant prayed
the court to give to the jury the following instructions,
to-wit:''    After setting out defendant's refused in-
structions, follows the recital, ''which instructions the
court refused to give, to which refusal the defendant
excepted at the time and saves herein its exceptions.''

Counsel for plaintiff insist in their brief: ''The
appellant having made no objection at the time to plain-
tiff's instructions or to the action of the court in giv-
ing said instructions, or in refusing its instructions
1, 2, 3 and 4, those instructions cannot be brought be-
fore this court for review.''    [Citing Sheets v. Insur-
ance Co., 226 Mo. 613, decided by the Supreme Court
and State v. Reed, 128 S. W. 4, decided by the Spring-
field Court of Appeals.    The opinion in the Sheets

case is directly in point and we quote therefrom as fol-
lows:

"The only objection made by counsel for appel-
lant to the action of the court in giving said instruc-
tion numbered 3 is contained in the following lan-
guage: 'Which said instructions numbered 1, 2, 3, 4,
5, 6, 7, 8 and 9 asked by plaintiff, and each of them,
the defendant then and there excepted and still ex-
cepts.' While the foregoing language saves appel-
lant's exceptions to the action of the court in giving
said instruction number 3, yet the record nowhere
shows that counsel for appellant made any objection
whatever to the same, or to the action of the court in
giving it.

"It is elementary that before one can legally ex-
cept to the action of the court in giving or refusing
instructions, he must first request the court to give the
same or object thereto, as the case may be, before his
exceptions will be availing."

Rules of practice and procedure are as essential
to the just and orderly administration of justice as
are the rules and principles of the substantive law.
But a rule, whether it be one of practice or of sub-
stantive law, that has no good reason behind it, no real
purpose to serve in the orderly and uniform adminis-
tration of the law is not a rule of justice at all but an
edict of autocratic power. Let us see if the rule con-
tended for by plaintiff is supported by substantial rea-
son. It is a settled and very just rule that no exception
should be considered by the appellate court where the
trial court was not given a fair opportunity to correct
the error at the time of its commission. It would be
most unfair to permit a party to acquiesce apparently
in the ruling of the court and then, after the day had
gone against him, to complain of those rulings. That
is the reason that lies behind the rule that a party
must object at the time to the giving of instructions

asked by his adversary which he deems erroneous and prejudicial.

If this were a case of first impression the writer, speaking only for himself, would say that an exception taken immediately after the court announced its ruling would be the substantial and legal equivalent of an objection offered 'before the announcement. It would notify the court that the exceptor was complaining of error in the instructions at a time when the court would have a full and fair opportunity to correct the error before harm could be done either party and that is the only office an objection could perform. The writer (speaking only for himself) fails to perceive any good reason for saying that, theoretically, at least, the objector must announce his objection before the ruling is announced or forever afterwards hold his peace. But this view has not received the sanction of the Supreme Court in the excerpt above quoted and since it is our duty to follow the latest decision of that court, we must hold that the rulings of the trial court in giving the instructions asked by plaintiff are not before us for review. We do not agree with the argument of plaintiff that the opinion of the Supreme Court holds that a party whose instructions are refused must object to their refusal before they are refused. Whatever aid that idea may receive from the language employed in the opinion we think was inadvertently and not intentionally given. Until a party's request for a certain instruction is refused, he has no ground for complaint—no objection to make. When the refusal comes he is at his rope's end and has nothing to do but except. If the argument of plaintiff is sound, it would be incumbent on counsel to say, when he offers his instructions to the court, or have it understood that he said: "I offer, your Honor, instructions numbered one, two, three and four. I request that they be given and I here and now object to the refusal of any of them."

The contention is too absurd to receive serious consideration. We conclude that the defendant's refused instructions are before us for review and since the error noted appears in them, it follows that the judgment must be reversed and the cause remanded. All concur.