BELAVAL, PETICIONARIO *v.* CÓRDOVA, JUEZ DE DISTRITO, ET AL., DEMANDADOS.

SOLICITUD para que se expida mandamiento de *certiorari* al Juez de la Corte de Distrito de San Juan, Sección 1ª., para anular una orden concediendo una prórroga indefinida para presentar el proyecto de exposición del caso en un procedimiento de *mandamus.*

No. 137.—Resuelto en diciembre 24, 1914.

TAQUÍGRAFOS—DEBER DE TRANSCRIBIR LAS NOTAS TAQUIGRÁFICAS.—La obligación de un taquígrafo de transcribir las notas taquigráficas de un caso, no surge hasta que la parte se las pide.

APELACIÓN—TRAMITACIÓN RÁPIDA DEL RECURSO—DEBERES DEL APELANTE Y DE LOS TRIBUNALES.—Es un deber imperativo y claro del apelante el tramitar

con toda actividad el recurso, y de los tribunales, tanto sentenciadores como de apelación, el hacer que el apelante cumpla con ese deber y rechazar y desaprobar toda gestión de carácter dilatorio.

CERTIORARI—APELACIÓN PENDIENTE CONTRA LA MISMA ORDEN OBJETO DEL CERTIORARI—DISCRECIÓN DE LA CORTE SUPREMA.—El hecho de que una parte haya interpuesto apelación contra la orden que trata de revisar por medio de un recurso de *certiorari*, no le priva del derecho de ejercitar el recurso de *certiorari* cuando el de apelación es, como en este caso, inadecuado, siendo ésta una cuestión que descansa en la discreción de esta corte.

EXPOSICIÓN DEL CASO—PRÓRROGA DEL TÉRMINO PARA PRESENTARLA—INTERPRETACIÓN DEL ARTÍCULO 353 DEL CÓDIGO DE ENJUICIAMIENTO CIVIL.—El artículo 353 del Código de Enjuiciamiento Civil debe interpretarse cuando se trata de prórrogas para presentar el proyecto de exposición del caso en relación con el artículo 299 enmendado del mismo código, y en este caso particular con los artículos 5 y 6 de la ley de marzo 10, 1904, página 110, creando las plazas de taquígrafos de las cortes de distrito.

ID.—PRÓRROGA INDEFINIDA PARA PRESENTARLA—INTERPRETACIÓN DEL ARTÍCULO 299 ENMENDADO DEL CÓDIGO DE ENJUICIAMIENTO CIVIL—DISCRECIÓN DE LAS CORTES DE DISTRITO PARA PRÓRROGAR DICHO TÉRMINO.—La enmienda hecha al artículo 299 del Código de Enjuiciamiento Civil por la Ley No. 70 de marzo 9, 1911, demuestra que la intención de la legislatura ha sido el quitar obstáculos que impidan el que una apelación se tramita con toda rapidez, y una corte de distrito no puede, en el ejercicio de su facultad discrecional, conceder una prórroga indefinida para que un apelante prepare el proyecto de exposición del caso.

ID.—PRÓRROGA INDEFINIDA PARA PRESENTARLA—ORDEN DICTADA CON EXCESO DE JURISDICCIÓN.—Una orden de una corte de distrito concediendo "una prórroga de 30 días contados desde la fecha de la entrega del récord taquigráfico para presentar la exposición del caso" es nula por haber sido dictada con exceso de jurisdicción.

Los hechos están expresados en la opinión.

Abogados del peticionario: *Sres. J. H. Brown, Eduardo Acuña Aybar y Horacio S. Belaval.*

El Juez, Hon. Féliz Cordova Dávila, no compareció.

Abogado del demandado Roberto H. Todd: *Sr. Ramón Falcón.*

EL JUEZ ASOCIADO SR. HUTCHISON emitió la opinión del tribunal.

En procedimientos sobre *mandamus* seguidos en la Corte de Distrito de San Juan, Sección Primera, recayó sentencia en 22 de mayo de 1914, por la que se ordenaba que el peticionario fuera restituído en su cargo de Director de los Hospitales Municipales, del cual cargo, según se alegó, había sido destituído ilegalmente por el alcalde.

En 29 de mayo habiendo el demandado radicado su escrito de apelación una vez que le fué notificada la sentencia, solicitó de la corte una prórroga de treinta días, término que empezaría a contarse desde la fecha en que por el taquígrafo se le entregara la copia del récord, para preparar dentro del referido término la exposición del caso y pliego de excepciones, alegando como fundamento de la moción que la corte estaba para entrar en su período regular de vacaciones, que se había pedido la entrega de los autos pero debido a las muchas ocupaciones del taquígrafo en otros asuntos y por ser el récord bastante voluminoso no podría el taquígrafo entregar dicho récord dentro del término señalado en la ley para presentar la indicada exposición y pliego de excepciones.

Aparece en las minutas de la corte del mismo día, la siguiente resolución:

"A moción del abogado del demandado, la corte le concede una prórroga de 30 días, contados desde la fecha de la entrega del récord taquigráfico, para presentar la exposición del caso."

En 8 de septiembre el taquígrafo de la corte informó al secretario y al abogado del apelante que había terminado el récord taquigráfico el cual fué entregado también en la misma fecha.

En 3 de octubre el abogado del apelante, después de alegar nuevamente las muchas ocupaciones que había tenido en otros asuntos más urgentes y llamando otra vez la atención de la corte al hecho de ser muy voluminosos los autos, que se componían de 199 páginas, solicitó otra prórroga de treinta días más a contar de la fecha en que venciera la que ya le había sido concedida. En octubre 5 la corte proveyendo a esta moción concedió una prórroga de quince días más para presentar la exposición del caso, a partir del día en que venciera la ya concedida.

En 22 de octubre el abogado del apelante alegando los mismos fundamentos, volvió a solicitar otra prórroga de diez días, a partir de la fecha del vencimiento del término adicio-

nal ya concedido, y en la misma fecha la corte concedió una
prórroga de cinco días dentro de los cuales debía presentarse
la exposición del caso.

En 27 de octubre el peticionario por las mismas razones
que han sido sustancialmente alegadas aquí, presentó una mo-
ción a la corte de distrito con el objeto de que reconsiderara y
dejara sin efecto las varias órdenes a que se ha hecho referen-
cia, y al día siguiente la corte, después de haber oído las ar-
gumentaciones de ambas partes declaró sin lugar dicha mo-
ción y concedió al demandante 10 días para radicar sus en-
miendas a la exposición del caso.

En noviembre 7 el demandante radicó su escrito de apela-
ción contra la expresada orden.

En la vista de las enmiendas propuestas a la exposición
del caso, que tuvo lugar en la fecha últimamente indicada, el
demandante reprodujo su moción que ya había sido discutida
y denegada en octubre 28, la cual fué nuevamente declarada
sin lugar, y habiendo sido sostenidas las objeciones formula-
das a la exposición concedió la corte al demandado cinco días
para presentar enmiendas.

En 20 de noviembre el peticionario presentó a este tribu-
nal su solicitud interesando la expedición de un mandamiento
de *certiorari,* alegando además de los hechos arriba indicados,
que la apelación perfeccionada contra la orden de octubre 28,
al efecto de que no quedase consentida dicha orden, es inade-
cuada e insuficiente, por el tiempo que ha de emplearse en el
curso ordinario del procedimiento para su resolución final,
lo cual podría dar por resultado un completo o parcial fracaso
de la justicia si se tiene en cuenta que está para vencer y ven-
cerá el término del cargo del alcalde a quien incumbe la obli-
gación, — que es el demandado en los procedimientos de *man-
damus,* — antes de que dicha apelación pueda verse y resol-
verse en definitiva; que habiendo sido aprobada la exposición
del caso enmendada por el Juez de distrito, a pesar de la opo-
sición de la parte demandante, se prosigue por el alcalde de-
mandado y apelante en aquel caso ante este tribunal la ape-

lación interpuesta contra la orden a que se·ha hecho referencia primeramente; que la orden de 29 de mayo, así como todas las órdenes y procedimientos subsiguientes habidos en la corte inferior son nulos, por carecer la corte de facultades para conceder una prórroga por un tiempo indefinido y para dejar, como lo hizo por la orden primeramente indicada, a voluntad del taquígrafo y del apelante la fijación de la fecha para presentar la exposición del caso, delegando así una facultad que pertenece exclusivamente al juez en abuso de la discreción judicial y en exceso de su jurisdicción; y en mérito de estas alegaciones fué expedido el auto, remitidas las actuaciones a esta corte y ahora se nos pide que resolvamos las cuestiones así planteadas.

No se ha llamado la atención de este tribunal a ningún caso bien razonado de fecha reciente que haya sido considerado debidamente, en el que se resuelva terminante y satisfactoriamente la cuestión que aparece envuelta precisamente en primer término, en el presente caso, y en tal investigación, según hemos podido hacerla dentro del tiempo de que disponemos para ello, no hemos encontrado ninguno. Sin embargo, los muy pocos casos en los cuales se ha discutido o tratado ligeramente la cuestión, bien por estar necesariamente envuelta o porque en ellos se hace referencia a la misma de modo incidental (*obiter dicta*), indican que existe generalmente una marcada inclinación por parte de las cortes para sostener la doctrina enunciada en 3 Cyc., 42, de que ''El término fijado por la corte para la aprobación y radicación de un pliego de excepciones tiene que ser definido.'' *Lansing* v. *Coats*, 18 Ind., 166; *Simonton* v. *H. and L. M: P. Co.*, 12 Ind., 380; *Smith, etc.,* v. *Blakeman*, VIII Bush., 71 Ky., 476; *Freeman* v. *Brenham, etc.*, XVII B. Monroe, 56 Ky.' 603; *Reisler* v. *Interborough Rapid Transit Co.*, 135 N. Y. S., 603; *Gross* v. *Wood*, 83 Atl., 337; *Parker* v. *Snow*, 9 N. E., 808; *Welch* v. *Kansas City, etc., Co.*, 132 S. W., 49.; *Mowery* v. *Wilson State Bank*, 72 Pac., 539, y casos citados; *Butler* v. *Scott*, 75 Pac., 496; *Granite State Fire Ins. Co.* v. *Harn*, 76 Pac., 822; y

casos citados por Kerr en las diferentes secciones del código de California que comprenden o se refieren a las prórrogas del término.

Con la excepción que más bien es dudosa de uno o dos casos de California — donde la cuestión es de muy poca importancia y la teoría de "un término razonable" no perjudica de modo alguno y donde la orden se convierte para todos los fines y propósitos en una prórroga definida que no ha de exceder de un tiempo determinado por virtud de la limitación terminante del estatuto en la discreción del juez en cuanto al máximum del término de cualquier prórroga que pueda concederse, — no existe por lo menos ninguna autoridad respetable en sentido contrario; y de conformidad con los dictados del sentido común, a la luz de los principios fundamentales de interpretación de estatutos y de justicia sustancial, no tenemos duda alguna, de acuerdo con nuestro propio estatuto, respecto a la corrección de la teoría del caso sostenida por el peticionario, por lo menos en lo que respecta a la carencia de facultades y a acción de la corte en exceso de su jurisdicción.

El alcalde de San Juan sostiene, 1°., que no habiendo el estatuto fijado límite alguno a la discreción de la corte, ésta es ilimitada y únicamente podrá ser revisada y regulada si se cometiere un grave abuso de la misma, y que en el presente caso se probó una buena causa para la prórroga original y no hubo abuso de discreción; 2°., que debemos presumir que el taquígrafo, como funcionario público, en el debido y fiel cumplimiento de los deberes de su cargo, entregaría el récord dentro de un tiempo razonable, y que los hechos en este caso respecto a la verdadera entrega de dicho récord demuestran la base firme en que descansa dicha presunción legal; 3°., que el peticionario hubiera podido haber solicitado en cualquier momento del juez que hiciera más definida la prórroga, fijando una fecha para su vencimiento, y no habiéndolo hecho así no puede ahora oirse su queja; y 4°., que el peticionario no solamente tiene un remedio claro y adecuado mediante la ape-

lación, sino que realmente ha preferido ejercitar el mismo y en la actualidad prosigue tal apelación.

El caso de Welch( supra), no citado por el alcalde, sostiene en principio la teoría de la primera proposición según ha sido expresada, y una vez establecida la premisa envuelta no puede negarse la fuerza de la lógica de tal razonamiento. Si fuera cierto que nuestro estatuto no establece limitación alguna en las facultades del juez de distrito, entonces no habría otro remedio que confirmar la orden apelada, y en lo que respecta a la cuestión relativa a la mayor o menor extensión del término que haya de darse, o de cuántas prórrogas sucesivas se concedan, así como a la duración de cada una de las mismas, aceptamos enteramente y de veras convenimos con la teoría sustentada por el alcalde y del caso de Missouri en cuanto a la aplicación de la norma general de "un término razonable;" pero cuando pasamos a considerar la facultad del juez sentenciador para conceder una prórroga no por cualquier término definido, ya sea largo o corto, sino por un tiempo indefinido cuya duración depende de la voluntad del taquígrafo y del apelante y especialmente del último, término "que puede ser por años o para siempre," suspendiendo así la aplicación de los preceptos del estatuto, cuyo objeto es abreviar "la demora de la ley" y facilitar el rápido despacho y la pronta resolución de los casos en apelación, la cuestión que se nos ofrece es enteramente distinta. Según el parecer que tenemos del caso no es necesario considerar la cuestión relativa al abuso de discreción, o la alegación referente a "justa causa."

En la suposición que sirve de base a la segunda cuestión se encuentra igual defecto fatal. El deber del taquígrafo de entregar el récord según el precepto terminante del estatuto tiene lugar solamente al pedírselo el apelante, por cuyo servicio el primero "tendrá derecho a recibir además de su sueldo, diez centavos como honorario por cada cien palabras que habrá de satisfacer la parte que solicite aquélla, cuya suma habrá de cargarse como costas de la causa a la parte

vencida en juicio.'' La teoría de que cualquier taquígrafo de una corte, de experiencia ordinaria, antes de que le sea pedido el récord· procederá inmediatamente que se archive el escrito de apelación a transcribir sus notas taquigráficas debido a la promesa tácita de una compensación (*quid pro quo*) que ha de recibir según el estatuto, sin tener en cuenta la posibilidad de que pueda ser abandonada la apelación o de que el récord en apelación sea preparado mediante una exposición del caso convenida por las partes, o que de otro modo no sea necesario recurrir al récord taquigráfico, envuelve una presunción forzada. Existe, sin embargo, un precepto legal al que más adelante haremos referencia, que no solamente establece una fuerte presunción en cuanto a dicha entrega del récord dentro de un término razonable después que ha sido pedido, sino que llega hasta determinar expresamente el máximum del término tanto para la entrega del récord como para cualquier prórroga que pueda ser concedida por la corte en relación con esto. En lo que respecta a este aspecto del caso, el demandado ''se ha perjudicado con su propio razonamiento.''

La tercera proposición del alcalde envuelve una rara interpretación de los respectivos deberes y obligaciones del apelante y del apelado, se contradice a sí misma, y cae por su propio peso con su simple enunciación. Es el deber claro e imperativo del apelante proseguir activamente su apelación, y de las cortes, tanto inferiores como de apelación ver que lo verifica con toda prontitud razonable y·censurar y desaprobar sin vacilaciones de ninguna clase y en términos precisos, todos los métodos y procedimientos dilatorios que puedan ser desarrollados en este sentido. No es de la incumbencia del apelado, que ha obtenido una sentencia por virtud de los méritos del caso en la corte inferior, ni debe exigírsele al mismo por regla general que incite al apelante y a la corte al debido cumplimiento de sus deberes. Su derecho a que el caso en apelación sea resuelto rápidamente es tan claro y de importancia tan grande, que no se permitirá que haya ningún arti-

ficio con el mismo.   La alegación de que el apelado puede en cualquier momento exigir al juez que fije la fecha en que vence una prórroga indefinida, reconoce al apelado así un derecho a pedir que se fije un término definido a tal prórroga y admite por su faz que al dictarse la primera orden de mayo 29 el juez no ejercitó en manera alguna aquella discreción en que el alcalde precisamente confiaba; y si tal discreción no fué ejercitada dentro del término señalado en el estatuto, cuya ampliación se pretendió, entonces, de acuerdo con el peso abrumador de las autoridades, la corte carecía enteramente de jurisdicción por virtud de los artículos invocados, y que aquí han sido citados, para dictar luego dicha orden.

El alcalde cita en apoyo de su contención la jurisprudencia establecida por esta Corte Suprema en los casos de *Vega et al.* v. *Rodríguez et al.*, 19 D. P. R., 1003, y *Morfi et al.* v. *The Fajardo Development Co.*, 19 D. P. R., 1202.   Sin embargo, dicha jurisprudencia no es aplicable, porque en dichos casos la exposición se entregó en tiempo, la corte actuó, por tanto, con plena jurisdicción, mientras que en éste, según veremos más adelante, la corte carecía por completo de facultades para dictar la orden de 29 de mayo en los términos en que lo hizo.

En cuanto a la existencia de un remedio en la apelación y al ejercicio simultáneo de la misma por el peticionario, no carecemos enteramente de precedentes en otras jurisdicciones al declarar que el peticionario no está necesariamente obligado a seguir el método que adoptó primeramente — que según se alega fué para que no quedase consentida la orden apelada — con exclusión de todos los demás remedios, y que por el mero hecho de haber interpuesto tal apelación no está necesariamente privado del derecho que tiene a acudir al remedio más rápido del *certiorari,* si el de la apelación resulta inadecuado, como verdaderamente creemos que lo es en este caso.   Estas son cuestiones dirigidas a la sana discreción de esta corte y no es necesario que sean discutidas extensamente.

El artículo 353 del código dice lo siguiente:

"Artículo 353. Cuando haya de verificarse algún acto de conformidad con lo dispuesto en este Código, referente a alegaciones en el pleito, o a fianzas que hayan de presentarse, o a la responsabilidad de fiadores, o a la preparación de exposiciones o pliego de excepciones, o a enmiendas a éstos, o a notificaciones que no sean relativas a apelación, el tiempo concedido para ello por este Código podrá ampliarse por la corte que conociere del pleito o por el juez de la misma si se alegara y demostrare una justa causa."

En cuanto a los principios que regulan tales concesiones de facultades, véase a Sutherland, secciones 391, 395, 456; Maxwell, pp. 203-210.

El precepto del código últimamente citado debe también, desde luego, ser interpretado siempre en relación con otros preceptos estatutorios relativos al acto "que haya de verificarse" a que en el mismo se hace referencia, que en este caso es el artículo 299 del mismo código, y como resultado de la eventualidad contenida en la primera orden de prórroga mencionada anteriormente, con los artículos 5 y 6 de la Ley de 1904 que prescriben el nombramiento, deberes y compensación de los taquígrafos de las cortes de distrito.

El artículo 299, según fué aprobado originalmente en 1904, era como sigue:

"Artículo 299. En la apelación contra una sentencia definitiva, el apelante debe presentar en la corte de apelación una copia del escrito interponiendo el recurso, del legajo de la sentencia y de cualquier pliego de excepciones o alegación hecha en el caso, en los cuales se apoyare el apelante. Cualquier alegación hecha en una moción pidiendo un nuevo juicio, o certificada después de la resolución de la misma, cuando la moción se hubiese hecho con referencia a las minutas de la corte, o cualquier pliego de excepciones certificado o utilizado en una moción pidiendo un nuevo juicio, podrá asimismo utilizarse en la apelación de una sentencia definitiva, de igual modo que en la apelación contra una orden concediendo o denegando un nuevo juicio."

Según fué enmendado en 1911, lee ahora como sigue:

"Artículo 299. Archivada que sea una apelación contra una sentencia de una corte de distrito, la parte apelante, dentro de los diez días siguientes a su archivo o de la prórroga que en su caso se le conceda por la corte deberá presentar a ésta, entregando a la vez copia a la parte contraria, un pliego en el que hará constar las excepciones tomadas durante el curso del caso y una exposición de éste.

"En ese pliego se expondrán todos los antecedentes del litigio y pruebas practicadas o presentadas entonces. De la demanda, contestación y demás alegaciones que forman parte del legajo de la sentencia, bastará que se haga referencia a ellos. Así las pruebas testificales como las documentales se expondrán en forma narrativa, extractándose lo que esencialmente concierna al punto o puntos controvertidos y determinando además, en cuanto a la prueba documental, los lugares, fechas, y en su caso, funcionarios que concurrieron en el otorgamiento

"Cuando sea necesario para una correcta inteligencia y resolución del asunto, que algún mapa, documento original o *exhibit* de cualquier clase, que no sea susceptible de reproducción por medio de copia, fotografía o de otro modo, sea presentado al examen e inspección de la Corte Suprema, se hará una descripción del mismo, y el secretario de la corte *a quo,* después de autenticar dicho mapa o documento original o *exhibit,* bajo su firma y sello de la corte, remitirá el mismo al secretario de la Corte Suprema, haciendo constar que se ha hecho parte del record del asunto.

"El pliego original así redactado, se archivará en la secretaría de la corte con la constancia de habérse entregado por el abogado del apelante a los abogados de las partes apeladas, una copia literal del mismo. Archivado dicho pliego en la secretaría de la corte, el secretario dará el mismo día o al siguiente cuenta de ello al juez, y éste fijará la fecha en que ante él deberán comparecer las partes para la aprobación de dicho pliego.

"Celebrada esa comparecencia, la corte, tomando en consideración las manifestaciones hechas por dichas partes y las resultancias del litigio, hará en el mencionado pliego las correcciones que estime oportunas y le impartirá su aprobación. Impartida ésta, certificará el juez al pié del pliego su contenido tal como lo haya aprobado, y pasará en tal forma a formar parte del legajo de la sentencia.

"Constituirá el record de una apelación la certificación que librará el secretario del tribunal *a quo* o los abogados de las partes, del legajo de la sentencia y de la notificación de la apelación. Dicha cer-

tificación deberá ser archivada en la secretaría de la Corte Suprema
dentro de los treinta días siguientes al en que se haya aprobado el
pliego de excepciones y exposición del caso, con la constancia de ha-
berse entregado a los abogados de las partes apeladas una copia li-
teral de la misma, certificada por el abogado del apelante.''

La diferencia más notable y esencial que existe entre el
artículo original y el enmendado en lo que respecta a cual-
quier cuestión habida en este caso, estriba en el hecho de que
en el año 1904 no se especificaba tiempo alguno dentro del
cual ''el acto que ha de verificarse'' será ejecutado; mientras
que según la enmienda, se exige que éste sea ejecutado ''den-
tro de los diez días,'' o·''de la prórroga'' si alguna se con-
cede.  Resulta de igual modo claro que las palabras por las
que se fija el término de diez días son específicas y terminan-
tes, claras y definidas, mientras que aquellas que se refieren
a la prórroga de dicho término son algo menos restringidas,
más generales e indefinidas; — que las primeras constituyen
la cláusula por la que se decreta, la parte principal, la incor-
poración del objeto fundamental de la enmienda, mientras que
las segundas son, en efecto, un ''disponiéndose'' (*proviso*)·
para evitar cualquier dificultad que pueda ocurrir en casos
excepcionales mediante el elemento de flexibilidad que así se
adiciona — y que los dos elementos, el específico y el general,
la cláusula en que se decreta y el ''disponiéndose'' (*proviso*),
la fijación de un término definido de diez días y la disposi-
ción condicional relativa al remedio en algún caso extraor-
dinario mediante prórroga del mismo, están estrecha, íntima
e inseparablemente asociados uno al otro.  Las copias debe-
rán entregarse ''dentro de los diez días,'' o ''dentro de'' ¿qué
tiempo?  Dentro de la prórroga del término limitado por el
estatuto; un tiempo razonable ciertamente, pero no un tér-
mino indefinido.  ''Un tiempo razonable,'' así como las pala-
bras ''dentro de,'' significa un límite máximo, un tiempo, es
cierto que está limitado solamente según lo determine la dis-
creción de la corte, cuando no existe abuso alguno, pero limi-
tado.  Y la prórroga no es automática; el privilegio de tal

tiempo adicional depende claramente del ejercicio de la discreción conferida a la corte.

La presunción de que el término debe ser definido en lo que respecta a la prórroga, creemos que es demasiado clara para que haya de ser discutida con mayor extensión. Lo que hizo la corte, si algo hizo, según su efecto legal, no fué prorrogar el término del estatuto ni conceder una prórroga, sino suspender la aplicación del estatuto hasta la fecha en que pudiera ocurrir la eventualidad a que la orden se refiere. La corte claramente no tenía facultades para hacer esto.

La conclusión a que hemos llegado en cuanto a este particular es inevitable si algo significan aquellos principios cardinales de interpretación de estatutos, según los cuales todo lo que necesaria o claramente se deduce de un estatuto forma tanta parte del mismo que aquello que aparece expresado en él; que de acuerdo con la máxima *noscitur a sociis* la significación de una palabra empleada en un estatuto deberá ser interpretada en relación con las palabras con las cuales va acompañada; que de ser posible debe dársele efecto a toda palabra, cláusula, y sentencia; que es el deber de la corte, en todo lo que sea posible, armonizar los distintos preceptos de modo que resulten compatibles y en armonía, dándoles un efecto razonable e inteligente a cada uno; que cuando los términos generales o expresiones contenidos en una parte de un estatuto son incompatibles con otros preceptos más específicos y particulares de otra parte del mismo, se dará efecto a estos últimos en el sentido de constituir la expresión más clara y definida de la voluntad legislativa; que las palabras, frases y sentencias de un estatuto, deberán ser interpretadas en el sentido en que son usadas y no en uno abstracto, pero con la debida consideración al contexto de las mismas, y en aquel sentido que esté más en armonía con todas las demás partes del estatuto; que cuando una parte del estatuto es susceptible de dos interpretaciones y el lenguaje de otra parte es más claro y definido, compatible con una de tales interpretaciones y opuesto a la otra, deberá adoptarse aquella inter-

pretación por virtud de la cual se armonicen todas las cláu-
sulas; que el "disponiéndose" (*proviso*) deberá ser interpre-
tado juntamente con la cláusula en que se decreta, con el fin
de dar efecto a cada una de ellas y para llevar a efecto la in-
tención de la legislatura según aparece de la ley considerada
en su totalidad; y que la cláusula en que se ordena es desde
luego, la parte principal del estatuto y como debe presumirse
que en sus términos está comprendido el objeto principal de
la ley, deberá "el disponiéndose" (*proviso*) ser interpretado
estrictamente.  36 Cyc., 1110-1188.

De una comparación más general, cuidadosa y detenida del
artículo en cuestión, según ha sido enmendado, con la pri-
mitiva ley, se verá claramente que la enmienda concuerda es-
trictamente con otras prescripciones numerosas semejantes,
que son explicativas de la tendencia digna de encomio de
nuestra legislatura la cual está en completa armonía con la
tendencia general del moderno pensamiento y se mantiene
al lado de las ideas más avanzadas de reforma en el procedi-
miento, eliminando tan rápida y radicalmente como sea po-
sible, sin ocasionar perjuicios y violentar los principios fun-
damentales, todos los obstáculos técnicos y motivos de de-
mora en este respecto, asegurando a todos los litigantes la
libre y eficaz administración de justicia por igual.

Que todo estatuto deberá ser interpretado teniendo en
cuenta el fin que el mismo se proponía alcanzar; que para de-
terminar este fin debe tenerse presente la ocasión y la nece-
sidad que hubo para aprobarlo, los defectos o peligros que
existían en la ley anterior, así como los remedios previstos
en la nueva; que debe darse al estatuto aquella interpretación
con la cual pueda promoverse mejor su objeto, suprimiendo
lo malo que contenga y asegurando los beneficios que tuvo en
perspectiva; que cuando la interpretación ordinaria de un es-
tatuto conduce a conclusiones tan peligrosas y absurdas que
jamás pudieron haberse tenido en cuenta, la corte puede adop-
tar una interpretación teniendo en consideración otros precep-
tos análogos y suplir así la omisión; que al interpretarse un

estatuto la intención legislativa será determinada considerando la ley en su totalidad con referencia a la materia en cuestión a que el mismo es aplicable, así como el sitio preciso en que dicho lenguaje aparece usado; que al considerar prescripciones que en un estatuto están en conflicto, la intención de la legislatura será siempre la estrella polar de interpretación y que todas las reglas particulares para la interpretación de tales preceptos se considerarán como subordinadas a este fin, son principios todos adicionales y algo anticuados, pero importantes, por los cuales debemos guiarnos en casos de esta naturaleza. 36 Cyc., *supra.*

Y finalmente, podemos referirnos otra vez a la ley arriba expresada relativa al nombramiento, deberes y compensación de los taquígrafos de las cortes.

La sección 6 de la misma, al hacer referencia a la copia del récord del taquígrafo, que según la sección anterior deberá entregarse a la parte que lo solicite mediante el pago de una compensación fijada, según se ha dicho, es como sigue:

"Sección 6. Será deber del taquígrafo entregar dicha copia dentro de treinta días, a partir de la fecha en que ha sido solicitada, a menos que la corte prorrogue dicho plazo que nunca excederá de otros 30 días."

Aun cuando se admita, por vía de argumento, que la orden de mayo 29 pudiera ser sostenida por entenderse que en ella se concede un término razonable, y considerando por un momento la cuestión desde el punto de vista en que ha sido considerada por el alcalde, resulta sin embargo difícil — y son de aplicación a este punto los casos de California arriba citados — que podamos dejar de llegar a la conclusión de que la sección que ha sido citada últimamente define y fija de modo claro e inexorable el máximum que dejó de fijar la corte y de modo concluyente convierte la ampliación vaga que trató de hacer esta última, en una prórroga definida por un término limitado que no ha de exceder de 60 días, a partir de la fecha en que fué solicitado el récord al taquígrafo — fecha que, se-

gún se alegó por escrito a la corte al solicitar la orden ya había sido fijada y señalada, si bien el taquígrafo jura que tal petición no se hizo hasta junio 6, lo que también se dijo en el informe oral del abogado del peticionario sin que fuera contradicho por el abogado del alcalde. De todos modos, el término de 60 días así fijado por la ley había vencido desde hacía más de un mes antes de que se entregara el récord, sin que el alcalde hubiera presentado ninguna moción solicitando nueva prórroga ni tomara ninguna medida para mantenerla vigente; careciendo, por tanto, la corte de jurisdicción para dictar las órdenes subsiguientes concediendo más prórrogas.

Si el máximum del término no es así fijado y determinado, entonces la corte, sin la más remota indicación de que existe algún propósito o intención de prorrogar el término para que el taquígrafo entregue el récord, puede con la mera concesión de una prórroga por tiempo indefinido, de acuerdo con los artículos 299 y 353, hacer indirectamente lo que precisamente de modo expreso y enfático le prohibe que haga, ya directamente o en otra forma, el lenguaje claro e inequívoco del artículo 6.

Para evitar cualquiera mala interpretación que pueda ocurrir, debemos añadir que no tenemos necesidad de resolver y no resolvemos, qué remedio podría o no obtenerse en caso de que el récord fuere entregado por el taquígrafo después de la prórroga del término de treinta días señalado en el estatuto, o de una prórroga del mismo debidamente autorizada, en tales circunstancias que, sin mediar falta por parte del apelante o error, por su inadvertencia, sorpresa o negligencia excusable, pudiera afectar de un modo serio y adverso a su derecho de apelación. Cualquiera que sea la jurisdicción que pudiera tener y ejercitar una corte, después de notificada la parte contraria, o que de otro modo sea inherente o haya sido conferida expresamente por el artículo 140 del código, u otra prescripción de ley, cualquiera que fuera el remedio que en equidad pudiera proporcionar, y cualesquiera que fueran los términos y condiciones que pudiera imponer

en tales circunstancias, parece razonablemente claro en cualquier caso que pueda ocurrir, que la mera entrega del récord después de vencido el término del estatuto, difícilmente produciría *ipso facto* el restablecimiento de prórrogas ya vencidas, de facultades ya perdidas, bien por no haber sido ejercitadas oportunamente, o si se ejercitaron, se habían agotado completamente, — prórrogas concedidas y facultades ejercitadas, si es que se concedieron o ejercitaron — única y exclusivamente por virtud de los preceptos contenidos en los artículos 299 y 353, ninguno de los cuales es por sí suficientemente amplio para comprender el caso hipotético que ha sido sugerido.

La orden dictada en mayo 29 de 1914, y todos los procedimientos subsiguientes a la misma que tuvieron lugar en la corte inferior, deben ser anulados.

> *Declarada con lugar la solicitud y anulada la*
> *orden de mayo 29, 1914 y todos los demás*
> *procedimientos subsiguientes a la misma.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.