BELAVAL, PETITIONER, v. CÓRDOVA DÁVILA, DISTRICT JUDGE, ET AL., RESPONDENTS.

PETITION for a Writ of *Certiorari* to the Judge of the District Court of San Juan, Section 1, to Annul an Order Granting an Indefinite Extension of Time for the Filing of a Statement of the Case in a *Mandamus* Proceeding.

No. 137.—Decided December 24, 1914.

STENOGRAPHER—OBLIGATION TO TRANSCRIBE NOTES.—The obligation of a stenographer to transcribe his notes in a case does not attach until the interested party so requests.

APPEAL—PROSECUTION OF APPEAL—OBLIGATION OF APPELLANT AND COURTS.—It is the plain and imperative duty of an appellant to prosecute the appeal with the utmost diligence, and it is the duty of both the trial and the appellate courts to see that the appellant complies with that duty and to reject and disapprove of all proceedings of a dilatory character.

ID.—CERTIORARI—DISCRETION OF COURT.—The fact that a party may have appealed from an order which he seeks to have reviewed by a writ of *certiorari* does not deprive him of the right of remedy by *certiorari* when the remedy by appeal is inadequate, as in the present case, this being a question which rests in the discretion of this court.

STATEMENT OF CASE—EXTENSION OF TIME—CONSTRUCTION.—In the matter of extension of time in which to file a statement of the case section 353 of the Code of Civil Procedure should be construed in connection with section 299 of the same code as amended, and in this specific case, with sections 5 and 6 of the Act of March 10, 1904, creating the office of stenographers of the district courts.

ID.—EXTENSION OF TIME—CONSTRUCTION—DISCRETION OF COURT.—The amendment of section 299 of the Code of Civil Procedure by Act No. 70 of March 9, 1911, shows that it was the intention of the Legislature to remove impediments to the speedy prosecution of appeals, and the district court in the exercise of its discretional power cannot grant an indefinite extension of time for appellant to prepare a draft of a statement of the case.

ID.—INDEFINITE EXTENSION OF TIME—JURISDICTION.—An order of a district court granting ''an extension of thirty days from the date of the delivery of the stenographic record for filing a statement of the case'' is void because made without jurisdiction.

The facts are stated in the opinion.

*Messrs. J. H. Brown, Eduardo Acuña* and *Horacio S. Belaval* for the petitioner.

Hon. Félix Córdova Dávila did not appear.

*Messrs. Robert H. Todd* and *Ramón Falcón* for the respondents.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

In *mandamus* proceedings brought in the District Court of San Juan, Section 1, judgment was rendered May 22, 1914, ordering the reinstatement of petitioner in the office of Superintendent of the Municipal Hospitals, from which it was held he had been illegally removed by the *alcalde.*

Upon May 29 defendant, having filed his notice of appeal after notification of the judgment, moved the court for an extension of 30 days, to run from the date upon which the stenographer should deliver the record, within which to present the statement of the case and bill of exceptions, and set forth the grounds for the motion that the court was about to enter upon its regular annual vacation; that request for the record had been made, but that owing to pressure of other

matters and the voluminous character of the record the stenographer would be unable to deliver such record within the time fixed by law for the filing of said statement and bill of exceptions.

The minutes of the same day show the following order:

"Upon motion of counsel for defendant, the court grants an extension of 30 days, counted from the date of delivery of the stenographic record, within which (*para*) to present the statement of the case."

Under date of September 8, the court stenographer notified the clerk and the attorney for appellant that the stenographic record had been completed. The latter was also delivered upon the same day.

On October 3 counsel for appellant, again alleging pressure of other more urgent matters and again calling attention to the voluminous record of 199 pages, applied for another extension of 30 days, to run from the date of expiration of the one already granted. On October 5 the court, acting on this motion, gave an extension of 15 days more within which to present the statement of the case, to be counted from the date of expiration of the former extension.

On October 22 appellant, upon the same grounds, asked for a further extension of 10 days from the date of expiration of the additional time already given, and on the same day the court granted an extension of five days within which to present the statement.

On October 27 petitioner, upon substantially the same grounds urged herein, moved the district court to reconsider and set aside the various orders above mentioned, and the court upon the day following, after hearing both parties, denied the motion and gave the plaintiff 10 days within which to file amendments to the statement of the case.

Notice of appeal from said order was filed by plaintiff on November 7.

At the hearing as to proposed amendments to the statement of the case on the date last mentioned, plaintiff renewed

the motion argued and denied on October 28, which was again overruled, and objections to the statement being sustained, defendant was given five days in which to amend.

On November 20 petitioner filed in this court his application for a writ of *certiorari,* setting up in addition to the facts above mentioned that the appeal perfected from the order of October 28, in order to avoid the appearance of acquiescence therein, is wholly inadequate and insufficient by reason of the time required in ordinary course of procedure for the final disposition thereof; that the same may result in a partial, if not a complete, failure of justice in view of the fact that the term of office of the incumbent *alcalde,* respondent in the *mandamus* proceedings, is about to expire and, will expire before such appeal can be finally heard and decided; that the amended statement of the case having been approved by the district judge over the protest of the petitioner, the appeal from the judgment first above mentioned is being prosecuted by the *alcalde;* defendant and appellant therein; that the order of May 29, as well as all subsequent orders and proceedings in the court below, is void for want of power to grant an extension for an indefinite period, and to leave, as was done by the order first mentioned, to the will of the stenographer and appellant the fixing of the date for the filing of the statement of the case, thus delegating an authority vested exclusively in the judge in abuse of the judicial discretion and in excess of jurisdiction, and upon this showing the writ issued, the record was brought up, and we are now called upon to decide the question so raised.

Our attention has been directed to no recent, well reasoned, carefully considered case conclusively and satisfactorily disposing of the exact question primarily involved herein, and, in such investigation as the time at our disposal has permitted, we have found none. The very few cases that have discussed or touched upon the matter, however, either as necessarily involved or by way of *obiter dicta,* indicate a strong inclination on the part of the courts generally to sus-

tain the doctrine as announced in 3 Cyc., 42, that "The time fixed by the court for the settling and filing of a bill of exceptions must be a definite time." *Lansing* v. *Coates,* 18 Ind., 166; *Simonton* v. *H. and L. M. P. Co.,* 12 Ind., 380; *Smith, etc.* v. *Blakeman,* VIII Bush., 71 Ky., 476; *Freeman* v. *Brenham,* etc., XVII B. Monroe, 56 Ky., 603; *Reisler* v. *Interborough Rapid Transit Co.,* 135 N. Y. S., 603; *Cross* v. *Wood,* 83 Atl., 337; *Parker* v. *Snow,* 9 N. E., 808; *Welch* v. *Kansas City, etc., Co.,* 132 S. W., 49; *Mowery* v. *Bank,* 72 Pac., 539, and cases cited; *Butler* v. *Scott,* 75 Pac., 496; *Granite State Fire Ins. Co.* v. *Harn,* 76 Pac., 822; and cases cited by Kerr under the various sections of the California code involving or relating to extensions of time.

With the rather doubtful exception of one or two cases in California, where the matter is of negligible importance, and the theory of "a reasonable time" is entirely harmless, the order being to all intents and purposes converted into a definite extension of not to exceed a specified time, by reason of the stringent statutory limitation upon the discretion of the judge as to the maximum period of any extension that may be granted, there is at least no respectable authority *in contra;* and following the dictates of ordinary common sense in the light of fundamental principles of statutory construction and substantial justice, we have no doubt whatever, under our own statute, as to the soundness of petitioner's theory of the case, in so far as the contention as to want of power and action in excess of jurisdiction is concerned.

The *alcalde* argues, first, that the statute having placed no limit upon the discretion of the court, the latter is unbounded, subject to revision and control only in the event of gross abuse, and that in the present case just cause for the original extension was shown and there was no abuse of discretion; second, that we must presume that the stenographer, as a public official, would in the regular and conscientious discharge of his official duties deliver the record within a reasonable time, and that the facts in this case as to actual delivery

of such record show the solid foundation upon which such legal presumption is based; third, that petitioner might at any time have applied to the judge to make the extension more definite by fixing a date for the expiration thereof, and not having done so cannot now be heard to complain; and, fourth, that petitioner not only has a plain and adequate remedy by way of appeal, but has in fact elected to resort to the same and is actually prosecuting such appeal.

The Welch case, *supra,* although not cited by the *alcalde* sustains in the abstract the theory of the first proposition as stated and, once the premise involved is established, the logical force of such reasoning cannot be denied. Were it true that no limitations are placed by our statute upon the powers of the district judge, then there would be no other alternative than to affirm the order appealed from, and in so far as the matter of how long or how short a period shall be given or the question of how many successive extensions shall be granted and the duration of each is concerned, we fully accept and cordially concur in the theory of the *alcalde* and of the Missouri case as to the application of the standard test of "a reasonable time"; but when we come to consider the power of the trial judge to grant an extension, not for any specified term, long or short, but for an indefinite time contingent as to its duration upon the will of the stenographer and of the appellant, and especially upon the pleasure of the latter, a period that "may be for years and may be forever," thus suspending the operation of statutory provisions designed to shorten "the law's delay" and to promote the prompt despatch and early decision of cases on appeal, we are confronted with quite a different proposition. Under our view of the case we need not dwell upon the question of abuse of discretion or showing made as to "just cause."

In the basic assumption of the second proposition is found the same fatal defect. The duty of the stenographer to furnish the record, by express provision, arises only upon the application of appellant, and for this service the former "shall

be entitled to receive, in addition to his salary, a fee of ten cents per one hundred words to be paid by the party requesting the same, and to be taxed as costs in the case against the party finally defeated in the action.'' The theory that the average court stenographer of ordinary experience, in anticipation of such request with its implied promise of the statutory *quid pro quo,* will, upon filing a notice of appeal, proceed forthwith to the transcription of his notes, without regard to the possibility of abandonment of such appeal or of the making up of a record on appeal by an agreed statement of the case, or otherwise, without resort to the stenographic record, would thus seem to involve a somewhat violent presumption. There is, however, a provision of law to which we shall hereafter refer that not only creates a very strong presumption as to such delivery of the record within a reasonable time after request therefor, but goes even further and expressly determines the maximum period, both for such delivery and for any extension of time in this regard by the court. As to this feature of the case, respondent is ''hoist with his own petar.''

The third proposition of the *alcalde* involves a curious misconception of the respective duties and obligations of appellant and appellee, refutes itself, and falls of its own weight in the bare statement thereof. It is the plain imperative duty of the appellant diligently to prosecute his appeal, and of the courts, both trial and appellate, to see that he does so with all reasonable despatch, and to discourage and condemn without hesitation and in no uncertain tone all dilatory methods and tactics in this regard. It is not incumbent upon the appellee who has obtained a judgment upon the merits of his case below, nor, as a general rule, should he be required to goad the appellant and the court to the due performance of such duties. His right to a speedy determination of the case on appeal is so clear and of such paramount importance that no juggling therewith should be tolerated. The argument that appellee may require the judge at any time to fix the

date of expiration of an indefinite extension, recognizes the right of appellee to demand that a definite limit be placed upon such extension and admits on its face that in entering the first order of May 29 the judge did not exercise at all the very discretion upon which the *alcalde* relies; and if such discretion was not exercised within the statutory period, enlargement of which was attempted, then by the overwhelming weight of authority the court was wholly without jurisdiction, under the sections invoked and relied upon herein, thereafter to make such an order.

The *alcalde* cites in support of his contention the cases of *Vega et al.* v. *Rodríguez et al.,* 19 P. R. R., 952, and *Morfi et al.* v. *The Fajardo Development Co.,* 19 P. R. R., 1138. The cases referred to, however, are not applicable for the reason that in those cases the statement was presented in time and, therefore, the court acted with full jurisdiction; while in the case at bar, as we shall see, the court was wholly without power to make the order of May 29 as made.

As to the existence of a remedy by appeal and the simultaneous exercise thereof by petitioner, we are not wholly without precedent in other jurisdictions in holding that petitioner is not necessarily required to pursue the course first adopted, to avoid, it is claimed, the appearance of acquiescence in the order so appealed from, to the exclusion of all other remedies, and that by the mere fact of having taken such appeal he is not necessarily cut off from his right to more speedy relief by *certiorari,* if the remedy by appeal seems inadequate, as in this case, we think, is true. These are matters addressed to the sound discretion of this court and need not be discussed at length.

Section 353 of the Code of Civil Procedure reads as follows:

"Section 353.—When an act to be done, as provided in this Code, relates to the pleadings in the action, or the undertakings to be filed, or the justification of sureties, or the preparation of statements, or of bills of exceptions, or of amendments thereto, or to the services of

notices, other than of appeal, the time allowed by this Code may be extended, upon good cause shown, by the court in which the action is pending, or the judge thereof.''

As to the principle governing such grants of power see Sutherland, sections 391, 395, 456; Maxwell, pages 203-210.

The provision of the code last above quoted must also, of course, always be construed in connection with other statutory provisions relating to the ''act to be done'' therein referred to — in this case with section 299 of the same code, and as a result of the contingency specified in the first order of extension above mentioned, with sections 5 and 6 of the Act of 1904 providing for the appointment, duties, and compensation of stenographers of the district courts.

Section 299 of said code, as originally adopted in 1904, was as follows:

''Section 299.—In an appeal from a final judgment, the appellant must furnish the court with a copy of the notice of appeal, of the judgment roll, and of any bill of exceptions or statement in the case, upon which the appellant relies. Any statement used on motion for a new trial, or settled after decision of such motion, when the motion is made upon the minutes of the court, or any bill of exceptions, settled or used on motion for a new trial, may be used on appeal from a final judgment equally as upon appeal from the order granting or refusing the new trial.''

As amended in 1911, it now reads:

''Section 299.—After filing an appeal from a judgment of a district court, the appellant must, within ten days from the date of the filing thereof, or of (within) the extension of time in case the same should be granted by the court, present to said court a statement, a copy of which shall be served at the same time on the adverse party, stating the exceptions taken during the course of the proceedings and a summary of the case.

''In this statement there shall be set out all the particulars of the action and all the proofs taken or given at the time. Of the complaint, answer, and other allegatiaons made in the proceedings, only slight reference thereto shall be required. The testimony or docu-

mentary proof shall be narrated, extracting only those parts that may materially concern the matter or matters at litis and mentioning also, with reference to the documentary proof, the places, dates, and functionaries, if need be, who assisted at the execution thereof.

"When it should become necessary for an accurate intelligence and resolution of the matter, that a map, original document or exhibit of any sort which cannot be reproduced by copy, photograph or otherwise, be submitted to the examination and inspection of the Supreme Court, a description thereof shall be made, and the secretary of the court *a quo* after marking for identification said map, original document or exhibit under his hand and the seal of the court, shall send same to the secretary of the Supreme Court stating that they form part of the records in the case.

"The original statement thus drawn shall be filed in the office of the secretary of the court, stating also that a true copy of same has been delivered by the appellant's attorney to the attorneys for the adverse party. The said statement having been filed with the secretary of the court, this latter officer shall submit it on the same day or on the following, to the judge, who shall fix the date on which the parties thereto shall make appearance for the approval of said statement.

"After said appearance has been entered, the court, taking into consideration the statements made by said parties and the result of the controversy, shall enter on the above-mentioned statement such correction as he may deem advisable, and shall approve the same. Upon this approval, the judge shall certify at the foot of said statement the contents thereof, as approved by him, and it shall form part of the judgment roll.

"The record of an appeal shall be constituted by the certificate to be issued by the secretary of the court *a quo* or by the attorney of the parties, of the judgment roll and of the notification of the appeal. Said certificate shall be filed in the office of the secretary of the Supreme Court within the next thirty days following that on which the bill of exceptions and summary of the case was approved with a declaration that a literal copy of the same, certified to by the counsel for the appellant, has been delivered to the counsel for the appellees."

The most striking and material difference between the original and the amended section, in so far as any question in this case is concerned, lies in the fact that in 1904 no time

within which "the act to be done" shall be done is specified; while under the amendment the same is required to be accomplished "within ten days," or "within the extension of time," if any. It is equally apparent that the words fixing the period of 10 days are specific and particular, clear and definite, while those relating to the extension of such time are somewhat more unrestricted, general, and indefinite; that the former constitute the enacting clause, the principal part, the embodiment of the main object of the amendment, while the latter are in effect a proviso to prevent possible hardship in exceptional cases through the element of elasticity thus added, and that the two elements, the specific and the general, the enacting clause and the proviso, the establishment of a definite standard ten-day period and the conditional provision for relief in an emergency, by means of an extension thereof, are closely, intimately, and inseparably associated·one with the other. The copies must be furnished "within ten days" or "within" what? Within an extension of the definite statutory period — a reasonable time certainly, but not an indefinite time. "A reasonable time," as well as the word "within," implies a maximum limit, a time, it is true, limited only as the discretion of the court may determine, in the absence of abuse, but limited. And the extension is not automatic; the privilege of such additional time is clearly conditioned upon the exercise of the discretion given the court.

The implication of a definite time as to the extension is too clear, we think, to require extended argument. What the court did in legal effect, if it did anything at all, was not to extend the statutory period; not to give an extension of time, but to suspend the operation of the statute until such time as the contingency contemplated might occur. Manifestly it had no power to do this.

The conclusion we have reached in this regard is inevitable if anything at all is meant by such cardinal principles of statutory construction as that whatever is necessarily or plainly implied in a statute is as much a part of it as that

which is expressed; that in accordance with the maxim, *noscitur a sociis*, the meaning of a word used in a statute must be construed in connection with the words with which it is associated; that effect is to be given, if possible, to every word, clause, and sentence; that it is the duty of the court, so far as practicable, to reconcile the different provisions, so as to make them consistent and harmonious, and to give a sensible and intelligent effect to each; that where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions will be given effect as clearer and more definite expressions of the legislative will; that the words, phrases, and sentences of a statute are to be understood as used, not in any abstract sense, but with due regard to the context, and in that sense which best harmonizes with all other parts of the statute; that where one part of the statute is susceptible of two constructions, and the language of another part is clear and definite, and is consistent with one of such constructions, and opposed to the other, that construction must be adopted which will render all clauses harmonious; that a proviso should be construed together with the enacting clause, with a view to giving effect to each and to carrying out the intention of the legislature as manifested in the entire act; and that the enacting clause is of course the principal part of the statute, and, as its terms may be presumed to have embodied the main object of the act, the proviso should be strictly construed. 36 Cyc., 1110-1188.

A careful and thoughtful comparison in a more general way of the section in question, as amended, with the original enactment will clearly show that the amendment is strictly in line with numerous other similar provisions illustrative of the commendable tendency of our Legislature, in full harmony with the general trend of modern thought, to keep well abreast of the more advanced ideas of reform in procedure, to eliminate as rapidly and radically as may be done with safety and without violence to fundamental principles all

technical obstacles and sources of delay in this regard, and to secure to all litigants the expeditious and effective administration of even-handed justice.

That every statute must be construed with reference to the object intended to be accomplished by it; that in order to ascertain this object it is proper to consider the occasion and necessity of its enactment, the defects or evils in the former law and the remedy provided by the new one; that the statute should be given that construction which is best calculated to advance its object by suppressing the mischief and securing the benefits intended; that where the ordinary interpretation of a statute leads to consequences so dangerous and absurd that they could never have been intended, the court may adopt a construction from analogous provisions, and thus supply an omission; that in construing a statute, the legislative intent is to be determined from a general view of the whole act, with reference to the subject-matter to which it applies and the particular topic under which the language in question is found; that in the consideration of conflicting provisions in a statute, and always, the legislative intent is the pole star of construction, and that all particular rules for the construction of such provisions must be regarded as subservient to this end, are a few additional trite but important principles by which we should be guided in cases of this kind. 36 Cyc., *supra*.

And, finally, we may revert to the act above mentioned providing for the appointment, duties, and compensation of court stenographers.

Section 6 thereof, referring to the copy of the stenographer's record required by the preceding section to be delivered to a party upon request and for a money consideration at a specified rate, as aforesaid, reads as follows:

"Section 6.—It shall be the duty of the reporter to deliver said copy within thirty days after being requested, unless the court extends the time, which in no case shall exceed another thirty days."

Conceding even, for the sake of argument, that the order of May 29 might be sustained as giving a reasonable time, and looking at the matter a moment from the *alcalde's* point of view, yet — and the California cases above mentioned are here in point — it is difficult to avoid the conclusion that the section last above quoted clearly and inexorably defines and fixes the maximum which the court failed to specify, and conclusively converts the vague enlargement attempted by the latter into a definite extension for a limited period of not to exceed 60 days from the date upon which the record was requested of the stenographer — a date that was represented in writing to the court upon application for the order as having been already fixed and determined, although the stenographer makes affidavit, and it was stated in the oral argument by counsel for petitioner, without contradiction by counsel for the *alcalde,* that no such request was made until June 6. In either event the term of 60 days thus fixed by law expired more than a month before actual delivery of the record, without motion for further extension or effort of any kind on the part of defendant to keep the same alive; and the court was therefore without jurisdiction to make the subsequent orders purporting further extensions of time.

If the maximum is not so fixed and determined, then the court, without the remotest suggestion of any purpose or intention whatever to extend the time for the delivery of the record of the stenographer, may, by the mere granting of an extension of time for an indefinite period under sections 299 and 353, do indirectly precisely what it is expressly and emphatically forbidden to do, directly or otherwise, by the plain and unmistakable language of said section 6.

To avoid possible misunderstanding, we may add that we need not now decide, and do not decide, what relief might or might not be had in case of a delivery of the record by the stenographer after the expiration of the statutory thirty-day period, or of an authorized extension thereof, under such circumstances as, through no fault of appellant or through his

mistake, inadvertence, surprise, or excusable neglect, would seriously and adversely affect his right of appeal. Whatever jurisdiction and power the court might have and exercise, after notice to the adverse party or otherwise, whether inherent or expressly conferred by section 140 of the code or other provision of law; whatever equitable relief it might afford; whatever terms and conditions it might impose, under such circumstances, it seems reasonably clear in any possible event that the mere delivery of the record after expiration of such statutory period could hardly operate *ipso facto* to revive extensions once expired and restore to life powers either lost for lack of timely exercise, or if exercised, completely exhausted — extensions granted and powers exercised, if at all, solely and exclusively under authority of sections 299 and 353, neither of which within itself is sufficiently broad to cover the hypothetical case suggested.

The order of May 29, 1914, and all proceedings subsequent thereto in the court below must be quashed.

> *Petition granted and the order of May 29, 1914, and all subsequent proceedings set aside.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.